GREGORY P. STONE (State Bar No. 78329)
JEREMY K. BEECHER (State Bar No. 301272)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

Attorneys for Plaintiff Intel Corporation

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| INTEL CORPORATION,<br><br>  Plaintiff,<br><br>  vs.<br><br>DOYLE RIVERS, an individual, and DOES 1 through 10, inclusive,<br><br>  Defendants. | Case No. 2:18-cv-03061-MCE-AC<br><br>**REPLY IN SUPPORT OF PLAINTIFF INTEL CORPORATION'S *EX PARTE* APPLICATION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY**<br><br>(*EXPEDITED CONSIDERATION REQUESTED*)<br><br>Judge:   Hon. Morrison C. England, Jr.<br>Date:    n/a<br>Time:    n/a<br>Crtrm.:  7 |

40881244

Plaintiff Intel Corporation ("Intel") submits this reply in support of its *ex parte* application for leave to conduct limited expedited discovery in support of its pending Motion for Preliminary Injunction. There is good cause under the facts shown and the relevant case law to order expedited discovery from Rivers and his new employer, Micron Technology.

### A. Rivers Does Not Deny Misappropriation Nor Does He Provide Any Assurance That Intel's Concerns Are Misplaced

Defendant Doyle Rivers ("Rivers") admits to taking the compilation of employee contact information and certain "sentimental" script programs, though he discounts the importance of these files. Notably absent from Rivers' opposition papers is <u>any statement that he took no other Intel confidential or proprietary documents</u>. Rivers submitted a declaration under oath and had the opportunity to tell the Court that he did not misappropriate any trade secrets or breach his confidentiality agreement, but he did not refute Intel's allegations. Instead, Rivers carefully states that he did not upload any confidential Intel documents to his <u>Micron</u> computer. *See* Rivers Declaration ¶ 25. He says <u>nothing</u> about his uploading of confidential Intel documents to his <u>home</u> computer (where he admits he attached the removable storage device with misappropriated files) or to other personal devices or accounts. He says nothing to explain Intel's detailed evidence submitted in support of its Motion for a Preliminary Injunction showing that Rivers tried to download top secret documents when he first inserted the USB device into his Intel computer days before he left Intel. *See* Declaration of Michael Hanada In Support of Intel's Motion for Preliminary Injunction, ("Hanada Decl."), ECF No. 10-5, ¶ 6. He says nothing to explain what he was doing for an hour with the USB device from 10:40-11:40 p.m. the night before he resigned, or to explain the evidence that he accessed file folders containing highly sensitive Intel documents in a manner consistent with transferring them to the device (misappropriation that Intel cannot confirm without discovery because of Rivers' destruction of evidence on the USB device). *See* Hanada Decl. ¶¶ 4, 7-9.

Rivers complains that this detailed testimony from Intel's forensic expert is "speculation," but does <u>nothing</u> to refute it. His silence speaks volumes. Rivers' failure to explain the evidence and his carefully worded declaration that avoids addressing the implications of the

evidence against him underscores the importance of expedited discovery so Intel can uncover the scope and nature of Rivers' misappropriation.

Rivers' repeated reassurance that he forensically imaged his home computer and "preserved the status quo" is not helpful, nor does it "moot" Intel's request for inspection as Rivers claims. Forensically imaging his computer just means there is a backup copy; Rivers can still access and use whatever information is on that computer, including Intel's confidential files—and that is the very harm Intel seeks to avoid. Moreover, if a forensic expert has imaged his home computer, why does Rivers not submit a declaration from that forensic expert that none of Intel's files are on, or have ever been on, the home computer? And why does the forensic expert not put in a declaration based on analysis of the home computer about what was on the USB device before it was wiped from that computer, and information about when the USB device was wiped? Again, Rivers' silence speaks volumes and underscores the need for expedited discovery—discovery that should be less burdensome since Rivers already has a forensic team in place. That forensic team should be able to expeditiously run searches on the imaged computer for the narrow requests for production and help produce any responsive documents from other personal accounts or devices.

Rivers' opposition also ignores the fact that he did not just delete the employee list from the USB device, he wiped it, which destroyed evidence of what had once been stored on the device. Hanada Decl. ¶¶ 8-13. Even when admitting that he deleted the compilation of employee contact information (Rivers Decl. ¶ 18), Rivers omits any mention of the timing of that deletion; he also says nothing about when or why he wiped the USB device—leaving the strong presumption that he did so to cover his tracks after receiving the October 2 letter from Intel's counsel raising concerns and demanding the return of the device. Micron's opposition is also silent about Rivers' wiping of the drive.

Rivers and Micron incorrectly argue that Intel's Complaint is about "past events" and not future harm. Not so. Intel faces *future* harm if Rivers uses Intel's confidential and trade secret information still in his possession or if his use of it in the past will have continuing benefit to him or to Micron. So long as the Intel files remain with Rivers, or if they already have been shared with Micron, there is an ongoing risk of harm. Rivers says nothing in his opposition to

reassure Intel or this Court that he does not have, and has not and will not use, Intel's valuable, trade-secret and confidential documents. The risk of harm is even more acute here given Rivers' prior actions destroying evidence to cover up wrongdoing.

### B. Intel Still Has Confidential and Trade Secret Information Despite Its Joint Venture with Micron

Intel does not dispute it is in a joint venture with Micron for manufacturing 3D XPoint. The Complaint clearly makes this allegation. The existence of a joint venture, however, does not mean that joint venture information related to 3D XPoint is not confidential information or that Rivers was somehow authorized to remove such information from Intel. Furthermore, the joint venture concerns the manufacture of 3D XPoint chips. The joint venture does not extend to the products into which those chips are incorporated, and Intel and Micron do not share information regarding product technology, including Intel's proprietary Optane™ products—products that Mr. Rivers worked on during his tenure at Intel. *See* Declaration of Kiran Pangal In Support of Intel's Motion for Preliminary Injunction ("Pangal Decl."), ECF No. 10-4, ¶¶ 8-11. Rivers acknowledges as much. *See* Rivers Decl. ¶ 6.

Moreover, Rivers identified information related to 3D XPoint and Optane™ in his Trade Secret Acknowledgement Form as *Intel* confidential information. Pangal Decl. Ex. A. Similarly, no one disputes that a compilation of information about Intel employees, their contact information, and the composition of Intel's internal organizational structure is confidential and trade secret to Intel and not shared with Micron.

### C. There Is No Trade Secret Disclosure Requirement for DTSA Claims In This Court, And In Any Event, Intel Disclosed Its Trade Secrets

Rivers and Micron argue repeatedly in their oppositions that the Court should apply Section 2019.210 of the California Code of Civil Procedure to this case and prohibit Intel from taking *any* discovery at this juncture until it discloses its trade secrets with particularity. But Section 2019.210 and precedent based on this Section are inapplicable here.

*First*, Intel's trade secret claim against Rivers is brought under the federal Defend Trade Secrets Act ("DTSA")—not under California state law. The DTSA lacks any provision akin to Section 2019.210. Congress could have included such a requirement in the DTSA, but it

did not. The Court should reject Rivers' invitation to override both the statute's plain text and Congress' apparent intent by imposing a pre-discovery disclosure requirement where Congress declined to do so. It is telling that *none* of the cases cited by Rivers or Micron imposes such a trade secret disclosure requirement as a threshold for discovery in the context of a DTSA claim.[1]

*Second*, even as to claims brought *under California's trade secret law*, courts in this District have frequently *rejected* the application of Section 2019.210 pursuant to the *Erie* doctrine. They have done so because any requirement that trade secrets be disclosed before discovery begins directly conflicts with the timing of discovery set out in the Federal Rules of Civil Procedure. As Judge Mueller stated in rejecting a request for a protective order akin to the one sought here:

> The court finds persuasive the reasoning in *Hilderman v. Enea TekSci, Inc.* . . . . In *Hilderman*, the court observed that section 2019.210 "*conditions* discovery regarding trade secrets on plaintiff['s] sufficiently identifying the trade secret," with the potential for plaintiff's being barred from discovery practice otherwise allowed by the Federal Rules. . . . Absent the precondition imposed by section 2019.210, defendants are required to provide meaningful responses to the discovery at issue.
>
> . . .
>
> Given the conflict between the applicable federal and state rules, the federal rule applies unless it [is] outside the scope of the Rules Enabling Act and unconstitutional. The Federal Rules are

---

[1] In fact, Rivers cites only a single case, *Vendavo, Inc. v. Price f(x)*, that arises solely in the context of the DTSA. But *Vendavo* is wholly inapposite, as it concerned the pleading standard required for a DTSA case to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and did not consider the timing of discovery under the DTSA. No. 17-cv-06930-RS, 2018 WL 1456697, at *3 (N.D. Cal. Mar. 23, 2018). Moreover, *Vendavo* explicitly *rejects* the application of Section 2019.210 in federal court at the pleading stage. *See id.* at n.3.

The other California federal court cases on which Rivers relies—to the extent they consider pre-discovery disclosure at all—involve claims brought under California law and are thus irrelevant here. *See E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, No. 1:17-cv-00808-DAD-EPG, 2018 WL 3062160, at *2 (E.D. Cal. June 19, 2018) (claims brought under the California Uniform Trade Secrets Act); *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1012 (E.D. Cal. 2011); *Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, No. C 07-5248 JW (PVT), 2008 WL 183520 (N.D. Cal. Jan. 18, 2008) (same); *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, No. 16-cv-00253-WHO, 2018 WL 2117424 (N.D. Cal. May 8, 2018) (requiring identification of trade secrets with particularity at the summary judgment stage).

> presumptively constitutional and there has been no showing that Rule 26 does not comply with the Rules Enabling Act. Section 2019.210 is inapplicable in this federal action and defendants' objection on that basis is overruled.

*AtPac, Inc. v. Aptitude Sols., Inc.*, No. CIV S-10-294 WBS KJM, 2010 WL 11571246, at *1 (E.D. Cal. Sept. 22, 2010); *see also Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.,* No. CIV. S-06-0533 GEB GGH, 2007 WL 273949, at *2 (E.D. Cal. Jan. 29, 2007) (Hollows, M.J.); *Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous. Inst.*, No. CIV S-07-1588 WBS EFB, 2008 WL 282374, at *3-4 (E.D. Cal. Jan. 31, 2008) (Brennan, M.J.) ("Here, the court finds that the Federal Rules of Civil Procedure govern discovery in this case. Applying state procedure is inappropriate especially where, as here, it has the effect of imposing an otherwise unmandated sequence to discovery.").[2] These decisions are correct—the state law pre-disclosure bar on discovery directly conflicts with the timing of discovery set forth in the Federal Rules of Civil Procedure—and are doubly persuasive here, where Intel proceeds under the federal DTSA, which imposes no pre-discovery disclosure requirement.

Even if a pre-discovery disclosure requirement were applicable here (it is not), Intel has met it by disclosing the trade secrets with reasonable particularity. Specifically, Intel provided a list of detailed categories of information as set forth by Rivers himself in his TSAF, categories that Rivers described as Intel trade secrets. Pangal Decl. Ex. A.

### D. Intel Did Not Unnecessarily Delay Seeking Expedited Discovery

Much of Rivers' opposition is spent complaining that Intel waited too long to seek expedited discovery. As Intel explained in its opening papers, Intel sought to work with Rivers and Micron prior to asking the Court for assistance. *See* Declaration of Carolyn Luedtke In Support of Intel's Motion for Preliminary Injunction ("Luedtke Decl."), ECF No. 10-2, ¶¶ 10-12 (describing efforts to work with Rivers' counsel); Hanada Decl. ¶ 16 (describing efforts to work

---

[2] Likewise, this Court has rejected, on the basis of the *Erie* doctrine, the application of any heightened pleading standard in federal court on the basis of Section 2019.210. *Verma v. Okev*, No. 2:13-CV-00865-MCE-EFB, 2013 WL 6887532, at *8 (E.D. Cal. Dec. 31, 2013) (England, J.) ("Federal rules govern federal pleading standards. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Therefore, Defendants' argument that this Court apply a heightened standard based on CUTSA is rejected.").

1  with Micron). Intel also tried to do its own internal investigation, but those efforts hit a wall
2  because of the destruction of evidence on the USB device and Rivers' refusal to allow inspection
3  of the computer he used to delete the contents of the USB device and any of his other devices. *See*
4  Hanada Decl. ¶¶ 6, 8-12. Once these efforts proved fruitless, Intel promptly sought the Court's
5  assistance.

### E. **Rivers Offers No Evidence That Expedited Discovery Would Be Burdensome.**

7  Rivers submitted no evidence or explanation that the expedited discovery Intel
8  requests would be burdensome. In fact, he does the opposite—he admits there would be no
9  burden. Rivers complains about allegedly burdensome requests, but then asserts he "will not have
10 this information on his home computer." Opp. at 4:6-7. If he will not have the requested
11 information in his personal possession, then there is no burden in responding to the discovery
12 requests by certifying that he has nothing to produce.

13 The discovery requests are not burdensome unless Rivers has engaged in
14 misappropriation and dissemination of Intel's information. For example, Request for Production
15 No. 1 asks for "All non-public, non-personal Intel documents in Your possession, custody, or
16 control that originated from an Intel server, an Intel computer, Your Intel laptop or email, or an
17 employee at Intel…." (This by its terms does not apply to joint venture information he obtained in
18 his new job at Micron because it only applies to Intel documents that came from an Intel server or
19 computer.) Request for Production No. 4 asks for "All documents reflecting or resulting from
20 Your use of the spreadsheet with the title "OrgTreeFlat_List.xlsx" (the list of Intel employee
21 names) that You downloaded from Intel on September 9, 2018…." As Rivers states in his
22 opposition, he *should not* have these documents on his home computer—or elsewhere in his
23 personal possession. Any burden claim should be a red flag, not a basis for denying the
24 application for expedited discovery.

25 Rivers' argument about privilege is unavailing. Only Rivers' communications with
26 Micron lawyers representing him at the time would conceivably be privileged. All other
27 communications with Micron personnel, such as with his manager, would not be privileged. And
28 to the extent there is privileged information that is responsive, it can be logged.

As for Rivers' privacy concerns related to the inspection of the home computer, the parties already have an agreed upon third party forensics expert—Stroz Friedberg—and Intel has agreed to use that vendor and to work cooperatively with Rivers on a protocol that would protect any sensitive personal information.  The parties did that for the USB device and Intel is confident the parties can agree on a protocol for the home computer and any other devices to which Rivers transferred Intel information.  Further, the information from his home computer is highly relevant here—Intel submitted evidence about Rivers' downloading of documents to a USB device, suspicious late-night activity indicative of transferring even more documents to the USB device, and destruction of evidence on the USB device.  *See* Hanada Decl. ¶¶ 4-9, 15.  Rivers admits that he then inserted the USB device with the misappropriated documents into his home computer. Rivers Decl. ¶ 18.  Tellingly, he does not deny that he transferred confidential or trade secret documents to that computer.  In balancing of privacy interests against the potential relevance of the information sought, the balancing supports the reasonable inspection sought by Intel.

Relatedly, though Micron offered a declaration to support its burden argument, there is no mention by Micron of any undue burden in conducting the searches it says it already conducted.  If any of the additional requests would pose an undue burden, Intel can meet and confer with Micron to agree on the scope of the Micron subpoena search.

DATED:  December 31, 2018                    Respectfully submitted,

MUNGER, TOLLES & OLSON LLP


By: _____*/s/ Carolyn Hoecker Luedtke*_____
    CAROLYN HOECKER LUEDTKE
Attorneys for Plaintiff Intel Corporation