1  GREGORY P. STONE (State Bar No. 78329)
   gregory.stone@mto.com
2  JEREMY K. BEECHER (State Bar No. 301272)
   Jeremy.beecher@mto.com
3  MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue, Fiftieth Floor
4  Los Angeles, California 90071-3426
   Telephone:    (213) 683-9100
5  Facsimile:    (213) 687-3702

6  CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
   carolyn.luedtke@mto.com
7  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, Twenty-Seventh Floor
8  San Francisco, California 94105
   Telephone:    (415) 512-4000
9  Facsimile:    (415) 512-4077

10 Attorneys for Plaintiff Intel Corporation

11

12                  UNITED STATES DISTRICT COURT

13               EASTERN DISTRICT OF CALIFORNIA

14                     SACRAMENTO DIVISION

15

16 INTEL CORPORATION,                 | Case No. 2:18-cv-03061-MCE-AC

17            Plaintiff,              | **ORDER GRANTING TEMPORARY RESTRAINING ORDER AGAINST DEFENDANT DOYLE RIVERS AND ORDERING INSPECTION OF HOME COMPUTER**

18       vs.

19 DOYLE RIVERS, an individual, and DOES 1 through 10, inclusive,

20            Defendants.            | Judge:    Hon. Morrison C. England, Jr.
                                      | Crtrm.:   7
21

22

23

24

25

26

27

28

# ORDER

Plaintiff Intel Corporation ("Intel") filed a motion for a preliminary injunction against Defendant Doyle Rivers ("Rivers"). The Court has reviewed the parties submissions, including declarations submitted in support of Intel's motion and Rivers' opposition, and the Court heard oral argument on February 7, 2019 from counsel for both parties. Based on the submissions and the argument, this Court finds and orders that a temporary restraining order as set forth below shall issue and shall be in place through February 21, 2019. Further, Rivers shall make certain electronic devices available for inspection to Intel's forensics vendor as set forth below. And, the parties shall submit to this Court a status report on February 21, 2019 on the inspection and the need, if any, for a preliminary injunction.

## I.     Temporary Restraining Order

Issuance of a temporary restraining order, as a form of preliminary injunctive relief, is an extraordinary remedy, and Plaintiffs have the burden of proving the propriety of such a remedy. See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). In general, the showing required for a temporary restraining order and a preliminary injunction are the same. Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

The party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008). The propriety of a TRO hinges on a significant threat of irreparable injury that must be imminent in nature. Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

Alternatively, under the so-called sliding scale approach, as long as the Plaintiffs demonstrate the requisite likelihood of irreparable harm and show that an injunction is in the public interest, a preliminary injunction can still issue so long as serious questions going to the merits are raised and the balance of hardships tips sharply in Plaintiffs' favor. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious

questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

Based on the evidence submitted to the Court and the oral argument on February 7, the Court finds that Intel has satisfied the requirements for a temporary restraining order and orders as follows:

Defendant Rivers shall not possess, use, retain, keep, hold, disclose, disseminate, access, or utilize any confidential, proprietary, or trade secret Intel information or documents related to 3D XPoint or Intel's Optane™ branded products, including about personnel working on those products, that he acquired while working for Intel and that contain information Intel has not disclosed outside of Intel (which includes information or documents shared with others under a nondisclosure agreement protecting its confidentiality) (with "documents" including all electronic versions of documents, data, spreadsheets, or any other hard copy or electronic stored information derived from such documents or information).

## II.  Inspection of Home Computer and Electronic Devices

Defendant Rivers shall make available to Intel for inspection by Intel's forensics vendor (Stroz Friedberg) the home computer that Rivers testified he used with the USB device that had been used to download information from his Intel laptop (hereinafter the "Home Computer"). Rivers shall also make available to Intel's forensics vendor for inspection any and all printers that have been connected to the Home Computer. For this order, the Home Computer and the printers will be referred to as the "Collected Devices." The Collected Devices shall be provided to Stroz Friedberg no later than February 12, 2019.

(a)  **Custody of the Collected Devices**

Stroz Friedberg will retain custody of the collected devices until the analysis outlined below is complete and any potential Intel documents have been remediated (i.e., removed) from the devices. Stroz Friedberg should make full, forensically sound bit stream copies of each physical volume present on the collected devices onto a separate storage media in the EnCase E01 file format using an industry standard program. This will be done to preserve evidence on the Collected Devices. Stroz Friedberg should document and record:

(i) a general description of the process and tools utilized to conduct the imaging
(ii) general make and model information about the devices
(iii) the MD5 hash values of the original volumes, and
(iv) the MD5 hash value of the copies.

(b)     **Searches for Intel Documents**

The Court orders that Intel, through Stroz Friedberg, be allowed to analyze the Collected Devices for evidence that Intel confidential, proprietary, or trade secret documents have been or are on the device or are otherwise in Rivers' possession. Stroz Friedberg should use industry standard practices to search for and identify any such documents on the Collected Devices. These steps may include the following:

- o   Stroz Friedberg may run searches for hash values and search terms on the Collected Devices (aimed at identifying any Intel confidential documents). The hash values and search terms will be provided by Intel and shown to Doyle Rivers' counsel prior to the search. They may include, but need not be limited to, the search terms "Intel," "Intel Confidential," "Intel Top Secret," "Intel Restricted Secret," "3D XPoint," "3DXP," and "Optane." Stroz Friedberg's search should include a search of all unallocated space. All hits on the hash values and search terms will be referred to as the "Identified Documents."

- o   If Stroz Friedberg finds any matches on the Collected Devices to the search terms or hash values provided by Intel, i.e., if there are any Identified Documents, then Stroz Friedberg will provide the file names and metadata for the Identified Documents to outside counsel for Doyle Rivers and outside and inside counsel for Intel for review.

- o   If Rivers' counsel believes the file name for an Identified Document corresponds to a personal document or a document belonging to another employer or party other than Intel to whom Rivers owes a confidentiality obligation, the parties shall meet and confer in good faith and work with Stroz Friedberg to resolve whether there is agreement that the document should be excluded from the Identified Documents.

- o   For each Identified Document that is not excluded after a review of file names by counsel, Stroz Friedberg will (a) remove that document permanently from the Collected Devices, (b) provide the document to Intel, and (c) maintain a preservation copy of the unremediated forensic image of the Collected Devices prior to remediation. Stroz Friedberg will retain this preservation copy of the Collected Devices until the litigation between Intel and Rivers is resolved or concluded. Nobody will have access to the preservation copy of the Collected Devices or any copy of files or data from the Collected Devices other than personnel at Stroz Friedberg who are working on the matter.

- o   For each Identified Document, Stroz Friedberg will analyze the Collected Devices to see if it can ascertain (a) how the document came to be on the Collected Device, (b) when it came to be on the Collected Device, (c) whether it has been accessed,

edited, disseminated, or printed from that device, and (d) the dates of any activity associated with the document.

### (c)     **Transfer of Intel Documents From Collected Devices**

The Court orders that Intel, through Stroz Friedberg, may conduct analysis of the Collected Devices to determine if there has been any transfer of Intel documents onto or off of the devices. This analysis may include the following steps:

- o   Stroz Friedberg will identify whether any USB or other removable storage devices or backup drives have been connected to the Collected Devices. Stroz Friedberg will note the device make, model, serial number, volume letter, first connection date, last connection date, and volume label. Stroz Friedberg will determine all information available about the use of any removable storage devices on the Collected Devices. Stroz will share all of this information with outside counsel for Intel and Rivers.

- o   Stroz Friedberg will look to see if the USB device Intel identified as being used on Rivers' Intel laptop on September 9, 2018 has ever been inserted in the Collected Devices. Stroz Friedberg will share the results of this question with Doyle Rivers' counsel and Intel.

- o   Stroz Friedberg will analyze whether or not cloud based storage accounts have been used or accessed from the Collected Devices and any information available about that access, including whether files were transferred to the cloud based storage accounts. Stroz Friedberg will share the results of this question with Doyle Rivers' counsel and Intel.

- o   Stroz Friedberg will analyze whether or not documents have been printed from the Collected Devices and if so, any information available about that printing. This will include checking for printer logs on Collected Devices. Stroz Friedberg will share the results of this question with Doyle Rivers' counsel and Intel.

- o   Stroz Friedberg will analyze whether or not documents have been transferred off the Collected Devices using an email account. Stroz Friedberg will share the results of this question with Doyle Rivers' counsel and Intel.

### (d)     **Analysis of Document Deletion or Device Tampering**

Intel, through Stroz Friedberg, may conduct analysis and look for any evidence that the Collected Devices, or any information or documents on a device, have been deleted, wiped, destroyed, or otherwise hidden from view since September 4, 2018. Stroz will use techniques it deems appropriate based on industry standards to look for evidence that documents or information has been destroyed on the Collected Devices since September 4, 2018. Those techniques may include the following:

- Stroz Friedberg will analyze all installed applications that were found on the hard drive of the Collected Devices that have file wiping capabilities and any associated run dates/times.

- Stroz Friedberg will record all operating system upgrades or installation dates and times on the home computer.

- Stroz Friedberg will check for event logs that show any evidence of manipulation of data on the home computer.

- Stroz Friedberg will check Internet browsing history for any evidence of searches run for anti-forensics information.  I.e. Google searches for document secure erase, different anti forensic/file wiping tools.

- Stroz Friedberg will check for lnk files and associated user artifacts on the home computer.  If any are found, Stroz Friedberg will take the next appropriate steps to follow up on that evidence.

## III.  Return of Intel Confidential, Proprietary, or Trade Secret Documents

At the conclusion of the inspection of the Collected Devices, the Court orders that Rivers shall return to Intel within 3 business days all confidential, proprietary or trade secret Intel information or documents related to 3D XPoint or Intel's Optane™ branded products, including about personnel working on those products, that he acquired while working for Intel and that contain information Intel has not disclosed outside of Intel except under a nondisclosure agreement protecting its confidentiality.  Stroz Friedberg can facilitate the return of this information from the Collected Devices through the protocol above while also preserving a forensic copy of the evidence for use in the litigation.  Stroz Friedberg can delete any Intel confidential, proprietary, or trade secret documents from Rivers' Collected Devices and then return those devices to Rivers.

///

///

///

///

///

///

///

1    If Rivers is in possession of information or documents (electronic or hard copy) related to

2  3D XPoint or Optane™ that he acquired while working for Intel that are stored or maintained in

3  places other than the Collected Devices, Rivers should identify those documents to Intel by

4  February 19, 2019 with specificity, including the nature of the document, the location of the

5  document, and how the document came to be in Rivers' possession.  The parties shall then work

6  on a protocol to be reported in the February 21, 2019 status update to the Court for how that

7  information shall be handled going forward.

8    IT IS SO ORDERED.

9  Dated:  February 14, 2019

10

11  _____
   MORRISON C. ENGLAND, JR
12  UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28