James Kachmar, State Bar No. 216781
**weintraub tobin** chediak coleman grodin
law corporation
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone:   916/558.6000
Facsimile:   916/446.1611

Attorneys for Defendant
DOYLE RIVERS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| INTEL CORPORATION,  )<br><br>        Plaintiff,  )<br><br>v.  )<br><br>DOYLE RIVERS, an individual, and DOES 1 )<br>through 10, inclusive,  )<br><br>        Defendants.  )<br>─────────────────────────  )<br><br>DOYLE RIVERS, an individual,  )<br><br>        Counterclaimant,  )<br><br>v.  )<br><br>INTEL CORPORATION,  )<br><br>        Counterdefendant.  )<br>─────────────────────────  ) | Case No. 2:18-cv-03061-MCE-AC<br><br>**ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM**<br><br>**AND DEMAND FOR JURY TRIAL**<br><br><br><br>Action Filed: November 27, 2018<br>Trial Date:  N/A |

## <u>ANSWER TO FIRST AMENDED COMPLAINT</u>

Defendant Doyle Rivers ("Rivers") for himself only, answer the First Amended Complaint ("FAC") as follows:

1.        Answering the allegations in Paragraph 1, Rivers admits that he "is a computer hardware engineer who was involved in Intel's development of 3D XPoint." Rivers further

admits that Intel developed the 3D XPoint technology in conjunction with its joint venture partner, Micron Corporation ("Micron"). Rivers is informed and believes that the joint venture between Intel and Micron as to 3D XPoint technology will be ending at some point in the near future. Rivers lacks information and knowledge as to the remaining allegations in Paragraph 1, and on that basis, denies the same.

2.     Answering the allegations in Paragraph 2, Rivers admits that he played some role in the development by Intel of certain products utilizing 3D XPoint technology and that this development led to the Optane branded solid state drives ("SSDs") that Intel sells. Rivers further admits that he had access to certain information concerning the development of these products during his employment with Intel. Rivers lacks information and knowledge as to the remaining allegations in Paragraph 2, and on that basis, denies the same.

3.     Answering the allegations in Paragraph 3, Rivers admits that in late August/early September 2017, he informed his manager, David Dixon, that Rivers was in the process of interviewing with Micron for a position in connection with their development of products utilizing 3D XPoint technology. Rivers further admits that on or about September 4, 2018, he informed Mr. Dixon that Rivers was having his final interview with Micron on September 7, 2018, and that if he received a job offer from Micron, he would make a decision and inform Mr. Dixon of that decision by Monday, September 10, 2018. Rivers further admits that he received an offer of employment from Micron on September 10, 2018, and informed Mr. Dixon that he was accepting the offer of employment that same morning. Rivers further admits that he offered to remain employed for an additional two weeks but also told Mr. Dixon that he would be willing to end his employment effective immediately to avoid any perception of a conflict of interest and Mr. Dixon agreed. Rivers admits that on or about September 9th, in anticipation of his possible departure, he downloaded a spreadsheet containing his former team members that he wished to send a "farewell email" to in the event he left his employment with Intel and was not provided an opportunity to send such an email. Rivers lacks information and knowledge as to the remaining allegations in Paragraph 3 and on that basis, denies them.

4.     Rivers denies the allegations in Paragraph 4.

weintraub **tobin** chediak coleman grodin
law corporation

5. Answering the allegations in Paragraph 5, Rivers admits that following the termination of his employment with Intel, he received a letter from Intel and that the contents of said letter speak for themselves. Rivers denies that that he handed the USB device over to his new employer. Rivers lacks information and knowledge as to the remaining allegations in Paragraph 5 and on that basis, denies the same.

6. Answering the allegations in Paragraph 6, Rivers admits that Intel filed this lawsuit against him after November 16, 2018. Rivers is unable to admit or deny the remaining allegations in Paragraph 6 on the ground that they call for information protected by the attorney-client communication privilege.

7. Answering the allegations in Paragraph 7, Rivers admit that a Stipulation was entered into between the parties and that the contents of that stipulation speak for themselves. Rivers lacks knowledge and information as to the remaining allegations in Paragraph 7 and on that basis, denies the same.

8. Answering the allegations in Paragraph 8, Rivers admits that he has provided written responses to plaintiff's discovery requests and that the contents of those responses speak for themselves. Rivers denies the remaining allegations in Paragraph 8, including the allegation that Rivers was hired by Micron to develop SSD products for which he had no such responsibilities for while employed by Micron.

9. Answering the allegations in Paragraph 9, Rivers admits that he has provided written responses to plaintiff's discovery requests and that the contents of those responses speak for themselves. Rivers denies the remaining allegations in Paragraph 9.

10. Rivers lacks knowledge and information as to the allegations in Paragraph 10 and on that basis, denies the same.

11. Rivers lacks knowledge and information as to the allegations in Paragraph 11 and on that basis, denies the same.

12. Rivers admits the allegations in Paragraph 12.

13. Rivers lacks knowledge and information as to the allegations in Paragraph 13 and on that basis, denies the same.

weintraub tobin chediak coleman grodin
law corporation

1    14.    Rivers lacks knowledge and information as to the allegations in Paragraph 14

2    and on that basis, denies the same.

3    15.    Answering the allegations in Paragraph 15, Rivers admits that he is the sole

4    named defendant in this action and that he resides in this judicial district. Rivers lacks

5    knowledge and information as to the remaining allegations in Paragraph 15 and on that

6    basis, denies the same.

7    16.    Rivers lacks knowledge and information as to the allegations in Paragraph 16

8    and on that basis, denies the same.

9    17.    Rivers admits the allegations in Paragraph 17.

10    18.    Answering the allegations in Paragraph 18, Rivers admits that he was employed

11    as an engineering manager at Intel and that he worked on the development of 3D XPoint

12    technology that was part of the joint venture between Intel and Micron. Rivers further admits

13    that he has worked on integrating 3D XPoint technology into Optane SSD products. Rivers

14    lacks knowledge and information as to the remaining allegations in Paragraph 18 and on that

15    basis, denies the same.

16    19.    Answering the allegations in Paragraph 19, Rivers admits that he had access to

17    certain information concerning 3D XPoint technology and Optane SSD products. Rivers lacks

18    knowledge and information as to the remaining allegations in Paragraph 19 and on that

19    basis, denies the same.

20    20.    Answering the allegations in Paragraph 20, Rivers admits that he signed an

21    Employment Agreement prior to beginning his employment with Intel and that the contents of

22    the agreement speak for themselves. Rivers denies the remaining allegations in Paragraph 20.

23    21.    Answering the allegations in Paragraph 21, Rivers admits that he signed an

24    Employment Agreement prior to beginning his employment with Intel and that the contents of

25    the agreement speak for themselves. Rivers denies the allegations in paragraph 21 to the

26    extent they are inconsistent with, or misstate, the terms of the agreement he signed on

27    September 18, 2010.

28    ///

weintraub **tobin** chediak coleman grodin
law corporation

22.     Answering the allegations in Paragraph 22, Rivers admits that he signed an Employment Agreement prior to beginning his employment with Intel and that the contents of the agreement speak for themselves. Rivers denies the allegations in paragraph 22 to the extent they are inconsistent with, or misstate, the terms of the agreement he signed on September 18, 2010.

23.     Answering the allegations in Paragraph 23, Rivers admits that he signed an Employment Agreement prior to beginning his employment with Intel and that the contents of the agreement speak for themselves. Rivers denies the allegations in paragraph 23 to the extent they are inconsistent with, or misstate, the terms of the agreement he signed on September 18, 2010.

24.     Answering the allegations in Paragraph 24, Rivers admits that in late August/early September 2017, he informed his manager, David Dixon, that Rivers was in the process of interviewing with Micron for a position in connection with their development of products utilizing 3D XPoint technology. Rivers further admits that on or about September 4, 2018, he informed Mr. Dixon that Rivers was having his final interview with Micron the on September 7, 2018, and that if he received a job offer from Micron, he would make a decision and inform Mr. Dixon of that decision by Monday, September 10, 2018. Rivers further admits that he received an offer of employment from Micron on September 10, 2018, and informed Mr. Dixon that he was accepting the offer of employment that same morning. Rivers further admits that he told Mr. Dixon that he would be willing to end his employment effective immediately to avoid any perception of a conflict of interest and Mr. Dixon agreed, although Mr. Dixon had initially offered to extend Rivers' employment for an additional two weeks as a courtesy.

25.     Rivers admits that after his employment with Intel ended, he became employed by Micron as its Vice President, 3DXP Product Engineering.

26.     Answering the allegations in Paragraph 26, Rivers admits that he participated in an exit interview with Darron Flagg. Rivers denies the remaining allegations in Paragraph 26.

///

weintraub tobin chediak coleman grodin
law corporation

27.     Answering the allegations in Paragraph 27, Rivers admits that during an exit interview, he and Mr. Flagg discussed confidentiality issues and Rivers agreed not to disclose Intel's confidential and trade secret information to any third parties. Rivers denies the remaining allegations in Paragraph 27.

28.     Answering the allegations in Paragraph 28, Rivers admits that he signed a form of a Trade Secret Acknowledgement Form ("TSAF") and that the contents of the TSAF he signed speak for themselves. Rivers denies the remaining allegations in Paragraph 28.

29.     Answering the allegations in Paragraph 29, Rivers admits that he signed a form of a TSAF and that the contents of the TSAF he signed speak for themselves. Rivers denies the remaining allegations in Paragraph 29.

30.     Answering the allegations in Paragraph 30, Rivers admits that he signed a form of a TSAF and that the contents of the TSAF he signed speak for themselves.

31.     Answering the allegations in Paragraph 31, Rivers admits that he signed a form of a TSAF and that the contents of the TSAF he signed speak for themselves.

32.     Answering the allegations in Paragraph 32, Rivers admits that he signed a form of a TSAF and that the contents of the TSAF he signed speak for themselves.

33.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 33 and on that basis, denies the same.

34.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 34 and on that basis, denies the same.

35.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 35 and on that basis, denies the same.

36.     Answering the allegations in Paragraph 36, Rivers admits that prior to his termination of employment with Intel, he accessed a file titled "OrgTreeFlat_List" in its name for the purpose of creating a list of employees to whom he wanted to send a farewell email. Rivers further admits that he added a column to the spreadsheet and inserted an "x" in this column next to the names of those employees to whom he intended to send a farewell email. Rivers admits that this file included the names and Intel email addresses for certain employees

weintraub tobin chediak coleman grodin
law corporation

of Intel and that Rivers then used this file to compile his recipient list for his farewell email. Rivers admits that he copied this file that he had created for the purpose of sending his farewell email to a USB stick so that he could send his farewell email in case he was prevented from doing so prior to terminating his employment with Intel.  Rivers further admits that some of the Intel employees on the list in that file had worked on the development of 3D XPoint technology, almost all of whom were known to Micron. Rivers admits that he used the file/spreadsheet he created and saved to his Intel computer to send a farewell email to approximately 175 Intel employees on that list and that the farewell email was sent from his Intel email account prior to his employment being terminated. Rivers further admits that he did not use the file he copied to the USB drive for any purpose. Rivers denies the remaining allegations in Paragraph 36.

37.     Answering the allegations in Paragraph 37, Rivers admits that prior to the termination of his employment with Intel, he downloaded the contents of a folder named "Old_Scripts," which contained 110 Perl Scripts to a USB drive and that these files had been created during the period 2005-2010 when Rivers was employed by Micron.

38.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 38 and on that basis, denies the same.

39.     Answering the allegations in Paragraph 39, Rivers admits that following the termination of his employment with Intel, he received an email with an attached letter from Intel and that the contents of said email and letter speak for themselves.

40.     Answering the allegations in Paragraph 40, Rivers admits that in response to receiving the October 2nd email and letter from Intel's counsel he contacted Micron's legal counsel and is informed and believes and thereon states that Micron's legal counsel responded to Intel. Rivers denies the remaining allegations in Paragraph 40.

41.     Rivers, on information and belief, admits the allegations in Paragraph 41.

42.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 42 and on that basis, denies the same.

///

43.     Answering the allegations in Paragraph 43, Rivers admits that he received a letter dated October 2, 2018 from Intel's counsel and that the contents of said letter speak for themselves. Rivers denies the remaining allegations in Paragraph 43.

44.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 44 and on that basis, denies the same.

45.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 45 and on that basis, denies the same.

46.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 46 and on that basis, denies the same.

47.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 47 and on that basis, denies the same.

48.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 48 and on that basis, denies the same.

49.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 49 and on that basis, denies the same.

50.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 50 and on that basis, denies the same.

51.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 51 and on that basis, denies the same.

52.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 52 and on that basis, denies the same.

53.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 53 and on that basis, denies the same.

54.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 54 and on that basis, denies the same.

55.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 55 and on that basis, denies the same.

///

weintraub **tobin** chediak coleman grodin
law corporation

56.     The allegations in Paragraph 56 do not constitute "a short and plain statement of the claim showing that the pleader is entitled to relief," and therefore no response is warranted. To the extent a response is warranted, Rivers denies the allegations in Paragraph 56.

57.     Rivers denies the allegations in Paragraph 57.

58.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 58 and on that basis, denies the same.

59.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 59 and on that basis, denies the same.

60.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 60 and on that basis, denies the same.

61.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 61 and on that basis, denies the same.

62.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 62 and on that basis, denies the same.

63.     Rivers lacks knowledge or information as to the truth of the allegations in Paragraph 63 and on that basis, denies the same.

64.     Answering the allegations in Paragraph 64, Rivers admits that he has provided sworn discovery responses in this matter and that the contents of said responses speak for themselves. Rivers lacks knowledge or information as to the truth of the allegation that "Stroz Friedberg could not locate these files on Rivers' home computer hard drive during its inspection"; and on that basis, denies the same. Rivers denies the remaining allegations in Paragraph 64.

65.     Answering the allegations in Paragraph 65, Rivers admits that he has provided sworn discovery responses in this matter and that the contents of said responses speak for themselves. Rivers denies the allegations in Paragraph 64 to the extent they misstate and/or are inconsistent with the discovery responses provided by Rivers.

66.     Rivers denies the allegations in Paragraph 66.

weintraub tobin chediak coleman grodin
law corporation

67.     Answering the allegations in Paragraph 67, Rivers admits that he has provided sworn discovery responses in this matter and that the contents of said responses speak for themselves. Rivers further admits that he was involved in the recruitment efforts of his employer, Micron, to recruit certain employees at Intel, all of whom were already known to Micron and some of whom, at the time of Rivers' hire, had already been contacted by Micron regarding possible employment by Micron. Rivers further admits that Micron and Intel are competitors in some areas, but also are and were joint venturers in connection with the development of 3D XPoint technology and that Micron learned the identities and capabilities of Intel employees who worked on 3D XPoint technology as a result of that joint venture. Rivers denies the allegations in Paragraph 67 to the extent they misstate and/or are inconsistent with the discovery responses provided by Rivers.

68.     Answering the allegations in Paragraph 68, Rivers admits that he was involved in the recruitment efforts of his employer, Micron, to recruit certain employees at Intel, all of whom were already known to Micron and some of whom, at the time of Rivers' hire, had already been contacted by Micron regarding possible employment by Micron. Rivers further admits that Micron and Intel are and were joint venturers in connection with the development of 3D XPoint technology and that Micron learned the identities and capabilities of Intel employees who worked on 3D XPoint technology as a result of that joint venture. Rivers denies the remaining allegations in Paragraph 68.

69.     Answering the allegations in Paragraph 69, Rivers admits that he was involved in the recruitment efforts of his employer, Micron, to recruit certain employees at Intel, all of whom were already known to Micron and some of whom, at the time of Rivers' hire, had already been contacted by Micron regarding possible employment by Micron. Rivers further admits that Micron and Intel are and were joint venturers in connection with the development of 3D XPoint technology and that Micron learned the identities and capabilities of Intel employees who worked on 3D XPoint technology as a result of that joint venture. Rivers further admits that some of the employees that Rivers was involved in recruiting joined Micron. Rivers denies the remaining allegations in Paragraph 69.

weintraub **tobin** chediak coleman grodin
law corporation

## FIRST CAUSE OF ACTION

70.     Rivers refers to and incorporates by reference each and every response and averment in this Answer responding to Paragraphs 1 through 69 of the FAC as though fully set forth herein.

71.     Rivers denies the allegations in Paragraph 71.

72.     Rivers denies the allegations in Paragraph 72.

73.     Rivers denies the allegations in Paragraph 73.

74.     Answering the allegations in Paragraph 74, Rivers admits that some, if not all, of the information that Intel claims to be a trade secret that "standing alone" is not a trade secret. Rivers denies the remaining allegations in Paragraph 74.

75.     Answering the allegations in Paragraph 75, Rivers admits that Intel and Micron are and were joint venturers with regard to the development of the 3D XPoint technology, and that most of the information concerning this technology was known to Micron at the time Rivers began his employment there in September 2018. Rivers denies the remaining allegations in Paragraph 75.

76.     Answering the allegations in Paragraph 76, Rivers admits that Intel and Micron are and were joint venturers with regard to the development of the 3D XPoint technology, and that most of the information concerning this technology was known to Micron at the time Rivers began his employment there in September 2018. Rivers denies the remaining allegations in Paragraph 76.

77.     Answering the allegations in Paragraph 77, Rivers admits that Intel and Micron are and were joint venturers with regard to the development of the 3D XPoint technology, and that most of the information concerning this technology was known to Micron at the time Rivers began his employment there in September 2018. Rivers denies the remaining allegations in Paragraph 77.

78.     Answering the allegations in Paragraph 78, Rivers admits that he signed a form of the TSAF on or about September 10, 2018, and that the contents of the TSAF form signed by Rivers speak for themselves. Rivers denies the remaining allegations in Paragraph 78.

weintraub **tobin** chediak coleman grodin
law corporation

79.     Rivers denies the allegations in Paragraph 79.

80.     Rivers denies the allegations in Paragraph 80.

81.     Rivers lacks information or knowledge as to the truth of the allegations in Paragraph 81, and on that basis, denies the same.

82.     Rivers denies the allegations in Paragraph 82.

83.     Rivers denies the allegations in Paragraph 83.

84.     Rivers denies the allegations in Paragraph 84.

<u>SECOND CAUSE OF ACTION</u>

85.     Rivers refers to and incorporates by reference each and every response and averment in this Answer responding to Paragraphs 1 through 68 of the FAC as though fully set forth herein.

86.     Answering the allegations in Paragraph 86, Rivers admits that he signed an "Employment Agreement" provided to him by Intel prior to beginning his employment at Intel. Rivers further admits that the Employment Agreement that Intel required him to sign as a condition of his beginning employment with Intel contained an illegal and unenforceable restraint on his right to practice his profession or trade in violation of section 16600 of the California Business & Professions Code. Rivers further admits, on information and belief, that other employees at Intel were required as a condition of the employment to sign similar, if not identical, employment agreements that contain an illegal and unenforceable restraint on their right to practice their profession or trade in violation of section 16600 of the California Business & Professions Code. Rivers further admits that the use of this illegal and unenforceable restraint in violation of section 16600 in his Employment Agreement constitutes and amounts to an unlawful, unfair and/or fraudulent business practice in violation of section 17200 of the California Business & Professions Code. Rivers denies the remaining allegations in Paragraph 86.

87.     Answering the allegations in Paragraph 87, Rivers admits that he signed an "Employment Agreement" provided to him by Intel prior to beginning his employment at Intel and that the contents of said agreement speak for themselves. Rivers further admits that the

weintraub tobin chediak coleman grodin
law corporation

Employment Agreement that Intel required him to sign as a condition of his beginning employment with Intel contained an illegal and unenforceable restraint on his right to practice his profession or trade in violation of section 16600 of the California Business & Professions Code. Rivers further admits, on information and belief, that other employees at Intel were required as a condition of the employment to sign similar, if not identical, employment agreements that contain an illegal and unenforceable restraint on their right to practice their profession or trade in violation of section 16600 of the California Business & Professions Code. Rivers further admits that the use of this illegal and unenforceable restraint in violation of section 16600 in his Employment Agreement constitutes and amounts to an unlawful, unfair and/or fraudulent business practice in violation of section 17200 of the California Business & Professions Code. Rivers denies the remaining allegations in Paragraph 87.

88.     Answering the allegations in Paragraph 88, Rivers admits that he signed an "Employment Agreement" provided to him by Intel prior to beginning his employment at Intel and that the contents of said agreement speak for themselves. Rivers further admits that the Employment Agreement that Intel required him to sign as a condition of his beginning employment with Intel contained an illegal and unenforceable restraint on his right to practice his profession or trade in violation of section 16600 of the California Business & Professions Code. Rivers further admits, on information and belief, that other employees at Intel were required as a condition of the employment to sign similar, if not identical, employment agreements that contain an illegal and unenforceable restraint on their right to practice their profession or trade in violation of section 16600 of the California Business & Professions Code. Rivers further admits that the use of this illegal and unenforceable restraint in violation of section 16600 in his Employment Agreement constitutes and amounts to an unlawful, unfair and/or fraudulent business practice in violation of section 17200 of the California Business & Professions Code. Rivers denies the remaining allegations in Paragraph 88.

89.     Answering the allegations in Paragraph 89, Rivers admits that he signed an "Employment Agreement" provided to him by Intel prior to beginning his employment at Intel and that the contents of said agreement speak for themselves. Rivers further admits that the

weintraub **tobin** chediak coleman grodin
law corporation

Employment Agreement that Intel required him to sign as a condition of his beginning employment with Intel contained an illegal and unenforceable restraint on his right to practice his profession or trade in violation of section 16600 of the California Business & Professions Code. Rivers further admits, on information and belief, that other employees at Intel were required as a condition of the employment to sign similar, if not identical, employment agreements that contain an illegal and unenforceable restraint on their right to practice their profession or trade in violation of section 16600 of the California Business & Professions Code. Rivers further admits that the use of this illegal and unenforceable restraint in violation of section 16600 in his Employment Agreement constitutes and amounts to an unlawful, unfair and/or fraudulent business practice in violation of section 17200 of the California Business & Professions Code. Rivers denies the remaining allegations in Paragraph 89.

90.     Answering the allegations in Paragraph 90, Rivers admits that he signed an "Employment Agreement" provided to him by Intel prior to beginning his employment at Intel and that the contents of said agreement speak for themselves. Rivers further admits that the Employment Agreement that Intel required him to sign as a condition of his beginning employment with Intel contained an illegal and unenforceable restraint on his right to practice his profession or trade in violation of section 16600 of the California Business & Professions Code. Rivers further admits, on information and belief, that other employees at Intel were required as a condition of the employment to sign similar, if not identical, employment agreements that contain an illegal and unenforceable restraint on their right to practice their profession or trade in violation of section 16600 of the California Business & Professions Code. Rivers further admits that the use of this illegal and unenforceable restraint in violation of section 16600 in his Employment Agreement constitutes and amounts to an unlawful, unfair and/or fraudulent business practice in violation of section 17200 of the California Business & Professions Code. Rivers denies the remaining allegations in Paragraph 90.

91.     Answering the allegations in Paragraph 91, Rivers admits that he signed an "Employment Agreement" provided to him by Intel prior to beginning his employment at Intel and that the contents of said agreement speak for themselves. Rivers further admits that the

weintraub **tobin** chediak coleman grodin
law corporation

Employment Agreement that Intel required him to sign as a condition of his beginning employment with Intel contained an illegal and unenforceable restraint on his right to practice his profession or trade in violation of section 16600 of the California Business & Professions Code. Rivers further admits, on information and belief, that other employees at Intel were required as a condition of the employment to sign similar, if not identical, employment agreements that contain an illegal and unenforceable restraint on their right to practice their profession or trade in violation of section 16600 of the California Business & Professions Code. Rivers further admits that the use of this illegal and unenforceable restraint in violation of section 16600 in his Employment Agreement constitutes and amounts to an unlawful, unfair and/or fraudulent business practice in violation of section 17200 of the California Business & Professions Code. Rivers denies the remaining allegations in Paragraph 91.

92.     Answering the allegations in Paragraph 92, Rivers admits that he signed an "Employment Agreement" provided to him by Intel prior to beginning his employment at Intel and that the contents of said agreement speak for themselves. Rivers further admits that the Employment Agreement that Intel required him to sign as a condition of his beginning employment with Intel contained an illegal and unenforceable restraint on his right to practice his profession or trade in violation of section 16600 of the California Business & Professions Code. Rivers further admits, on information and belief, that other employees at Intel were required as a condition of the employment to sign similar, if not identical, employment agreements that contain an illegal and unenforceable restraint on their right to practice their profession or trade in violation of section 16600 of the California Business & Professions Code. Rivers further admits that the use of this illegal and unenforceable restraint in violation of section 16600 in his Employment Agreement constitutes and amounts to an unlawful, unfair and/or fraudulent business practice in violation of section 17200 of the California Business & Professions Code. Rivers denies the remaining allegations in Paragraph 92.

93.     Answering the allegations in Paragraph 93, Rivers admits that he signed an "Employment Agreement" provided to him by Intel prior to beginning his employment at Intel and that the contents of said agreement speak for themselves. Rivers further admits that the

weintraub **tobin** chediak coleman grodin
law corporation

1   Employment Agreement that Intel required him to sign as a condition of his beginning

2   employment with Intel contained an illegal and unenforceable restraint on his right to practice

3   his profession or trade in violation of section 16600 of the California Business & Professions

4   Code. Rivers further admits, on information and belief, that other employees at Intel were

5   required as a condition of the employment to sign similar, if not identical, employment

6   agreements that contain an illegal and unenforceable restraint on their right to practice their

7   profession or trade in violation of section 16600 of the California Business & Professions

8   Code. Rivers further admits that the use of this illegal and unenforceable restraint in violation

9   of section 16600 in his Employment Agreement constitutes and amounts to an unlawful, unfair

10  and/or fraudulent business practice in violation of section 17200 of the California Business &

11  Professions Code. Rivers denies the remaining allegations in Paragraph 93.

12         94.     Answering the allegations in Paragraph 94, Rivers denies that he was asked

13  during his exit interview with Mr. Flagg whether he had returned "all Intel Confidential

14  Information."  Rivers admits that he signed a form of a TSAF on September 10, 2018, and that

15  the contents of the TSAF speak for themselves. Rivers further admits that he signed an

16  "Employment Agreement" provided to him by Intel prior to beginning his employment at Intel

17  and that the contents of said agreement speak for themselves. Rivers further admits that the

18  Employment Agreement that Intel required him to sign as a condition of his beginning

19  employment with Intel contained an illegal and unenforceable restraint on his right to practice

20  his profession or trade in violation of section 16600 of the California Business & Professions

21  Code. Rivers further admits, on information and belief, that other employees at Intel were

22  required as a condition of the employment to sign similar, if not identical, employment

23  agreements that contain an illegal and unenforceable restraint on their right to practice their

24  profession or trade in violation of section 16600 of the California Business & Professions

25  Code. Rivers further admits that the use of this illegal and unenforceable restraint in violation

26  of section 16600 in his Employment Agreement constitutes and amounts to an unlawful, unfair

27  and/or fraudulent business practice in violation of section 17200 of the California Business &

28  Professions Code. Rivers denies the remaining allegations in Paragraph 94.

weintraub tobin chediak coleman grodin
law corporation

95. Rivers denies the allegations in Paragraph 95.

96. Answering the allegations in Paragraph 96, Rivers admits that he signed an "Employment Agreement" provided to him by Intel prior to beginning his employment at Intel and that the contents of said agreement speak for themselves. Rivers further admits that the Employment Agreement that Intel required him to sign as a condition of his beginning employment with Intel contained an illegal and unenforceable restraint on his right to practice his profession or trade in violation of section 16600 of the California Business & Professions Code. Rivers further admits, on information and belief, that other employees at Intel were required as a condition of the employment to sign similar, if not identical, employment agreements that contain an illegal and unenforceable restraint on their right to practice their profession or trade in violation of section 16600 of the California Business & Professions Code. Rivers further admits that the use of this illegal and unenforceable restraint in violation of section 16600 in his Employment Agreement constitutes and amounts to an unlawful, unfair and/or fraudulent business practice in violation of section 17200 of the California Business & Professions Code. Rivers denies the remaining allegations in Paragraph 96.

97. Rivers denies the allegations in Paragraph 97.

## AFFIRMATIVE DEFENSES

By way of affirmative defenses to the allegations of the FAC herein, Rivers avers, as follows:

### FIRST AFFIRMATIVE DEFENSE

#### (Failure to State a Claim)

1. As a distinct affirmative defense, Rivers avers that the FAC, and each cause of action set forth therein, is barred to the extent it fails to state facts sufficient to constitute a claim against Rivers.

### SECOND AFFIRMATIVE DEFENSE

#### (Unclean Hands)

2. As a separate and distinct affirmative defense, Rivers avers that the FAC's claims against Rivers are barred, in whole or in part, by the doctrine of unclean hands.

**weintraub tobin chediak coleman grodin**
law corporation

THIRD AFFIRMATIVE DEFENSE

(Estoppel, Waiver and/or Laches)

3.     As a separate and distinct affirmative defense, Rivers avers that the claims against Rivers are barred, in whole or in part, by the doctrines of estoppel, waiver, and/or laches.

FOURTH AFFIRMATIVE DEFENSE

(Uncertainty)

4.     As a separate and distinct affirmative defense, Rivers avers that the FAC's first cause of action for misappropriation of trade secrets is barred because plaintiff has not identified its alleged trade secrets with reasonable particularity, thereby rendering its claims of trade secret misappropriation uncertain, ambiguous, and unintelligible.

FIFTH AFFIRMATIVE DEFENSE

(Failure to Take Reasonable Security Measures)

5.     As a separate and distinct affirmative defense, Rivers avers that the FAC's first cause of action for misappropriation of trade secrets is barred, either in whole or in part, because Cross-Complainant has failed to take reasonable measures to maintain the secrecy of the information it contends to constitute its trade secret information.

SIXTH AFFIRMATIVE DEFENSE

(Information from Public and/or Other Sources)

6.     As a separate and distinct affirmative defense, Rivers avers that the FAC's first cause of action for misappropriation of trade secrets is barred, either in whole or in part, because the information plaintiff contends to constitute its alleged trade secrets is readily ascertainable from public and/or other sources.

SEVENTH AFFIRMATIVE DEFENSE

(Lack of Independent Economic Value)

7.     As a separate and distinct affirmative defense, the FAC's first cause of action for misappropriation of trade secrets is barred, either in whole or in part, because the information plaintiff contends to constitute its alleged trade secrets does not derive independent economic

weintraub tobin chediak coleman grodin
law corporation

value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.

## EIGHTH AFFIRMATIVE DEFENSE

### (Comparative Fault)

8.     As a separate and distinct affirmative defense, Rivers avers that the FAC, and each cause of action set forth therein, is barred to the extent any harm or damage allegedly suffered by plaintiff was caused by its own intentional and/or negligent acts and/or omissions.

## NINTH AFFIRMATIVE DEFENSE

### (Lack of Specificity – Special Damages)

9.     As a separate and distinct affirmative defense, Rivers avers that the FAC's claim(s) for special damages is barred by plaintiff's failure to state such claim(s) with sufficient specificity.

## TENTH AFFIRMATIVE DEFENSE

### (Adequate Remedy at Law)

10.     As a separate and distinct affirmative defense, Rivers avers that plaintiff's attempt to seek injunctive relief, and/or any other form of equitable relief, as against Rivers fails because plaintiff does not state a basis for injunctive relief as against Rivers, and further to the extent plaintiff has an adequate remedy at law for any damages allegedly suffered by it (assuming plaintiff has suffered any damages, which Rivers denies).

## ELEVENTH AFFIRMATIVE DEFENSE

### (Failure to State a Claim – Punitive/Exemplary Damages)

11.     As a separate and distinct affirmative defense, Rivers avers that plaintiff is prohibited from recovering any punitive, treble, or exemplary damages, including any damages pursuant to Civil Code section 3426.3, Civil Code section 3294, 18 U.S.C. § 1836, et seq., or any  similar statute, against Rivers.

///

///

///

**weintraub tobin** chediak coleman grodin
law corporation

TWELFTH AFFIRMATIVE DEFENSE

(Failure to Mitigate)

12.     As a separate and distinct affirmative defense, Rivers avers that, to the extent it is determined plaintiff is entitled to any recovery against Rivers (which plaintiff is not), any such recovery is precluded and barred, in whole or in part, by virtue of plaintiff's failure to exercise reasonable diligence or care to mitigate any injury, loss, or damage allegedly sustained by it.

THIRTEENTH AFFIRMATIVE DEFENSE

(Illegality)

13.     As a separate and distinct affirmative defense, Rivers avers that all causes of action in the FAC that are based on the "Employment Agreement" are barred and fail to state a claim because plaintiff seeks to recover based on an illegal contract, which violates section 16600 of the Business and Professions Code.

FOURTEENTH AFFIRMATIVE DEFENSE

(Intervening/Superseding Causes)

14.     As and for an affirmative defense to all causes of action, Rivers avers that the purported damages sought by Plaintiff in this action were proximately caused, in whole or in part, by the intervening and superseding actions of persons or entities other than Rivers, including, without limitation, Plaintiff.

FIFTEENTH AFFIRMATIVE DEFENSE

(Reservation of Affirmative Defenses)

15.     Rivers avers that the FAC does not describe the claims or facts with sufficient particularity, and is couched in conclusory terms, so as to permit Rivers to ascertain what other defenses may exist. Accordingly, Rivers reserves the right to assert and rely on any and all further defenses that become available or appear during discovery in this action, and Rivers expressly reserves the right to amend this Answer for the purpose of asserting such additional defenses. Rivers additionally reserve the right to amend this Answer should Rivers later discover facts demonstrating the existence of new and/or additional defenses, and/or should a change in the law support the inclusion of new and/or additional defenses.

weintraub tobin chediak coleman grodin

law corporation

## COUNTERCLAIM

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Doyle Rivers ("Rivers") alleges his Counterclaim against Intel Corporation ("Intel") as follows:

### JURISDICTION AND VENUE

1.     This Court has supplemental jurisdiction under 28 U.S.C. §1367. This claim is also a compulsory counterclaim under FRCP 13.

2.     Venue is proper within this judicial district under 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to Rivers' claims occurred in this judicial district.

### THE PARTIES

3.     Counterclaimant Doyle Rivers is an individual residing in El Dorado Hills, California.

4.     Counterdefendant Intel Corporation is a corporation authorized to operate in California and operates business facilities in this judicial district.

### ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

### Intel Recruits Rivers from Micron; Intel Requires Rivers to Sign an Unlawful
### Non-Compete as a Condition of His Employment

5.     From 2001 to 2010, Rivers was employed with Micron Corporation ("Micron") and worked out of its facilities in Folsom, California. Rivers' work included the joint development of NAND flash technology, which was a joint venture between Micron and Intel. While working at Micron as part of the joint development team between Micron/Intel, Rivers was recruited by Intel to terminate his employment with Micron and joint Intel, where his work eventually included the development of 3D XPoint technology as part of another joint venture between Intel and Micron.

6.     On or about September 18, 2010, Intel provided Rivers with a document titled: "Employment Agreement." Rivers was advised that he had to sign the Employment Agreement as a term and condition of his becoming employed by Intel. The Employment Agreement further expressly states that Rivers' agreement was required "[i]n exchange for being employed

weintraub tobin chediak coleman grodin
law corporation

by Intel Corporation or any of its subsidiaries, affiliates or successors." Rivers signed the Employment Agreement on or about September 18, 2010. A. Douglas Melamed signed the Employment Agreement on Intel's behalf. A true and correct copy the signed Employment Agreement is attached hereto as **Exhibit A**.

7.     Section 6 of the Employment Agreement that was prepared by Intel and presented to Rivers as a condition of his beginning employment with Intel provides:

> "**Non-solicitation.**   I agree that for 12 (twelve) months after my employment ends, I will not solicit, directly or indirectly, any employee to leave his/her employment with Intel. This includes identifying Intel employees or providing employee compensation or skill information to any third party. I agree that any violation of this provision will result in immediate and irreparable injuries and harm to Intel, and that Intel shall have the option of pursuing all available legal or equitable remedies, including injunctive relief and specific performance."

Section 6 of the Employment Agreement is hereinafter referred to as the "Non-Solicitation Provision."

8.     Intel used the form of Employment Agreement attached as Exhibit A beginning in April 2010 and required a number of other employees to sign the same or similar agreement containing language identical or similar to the language in the Non-Solicitation Provision that is set forth above in Paragraph 7.

9.     At the time Intel required Rivers to sign the Employment Agreement as a condition of his beginning employment with Intel, as well as the time that Rivers employment with Intel terminated, section 16600 of the California Business and Professions Code provided and still provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

10.    At the time Intel required Rivers to sign the Employment Agreement as a condition of his beginning employment with Intel, as well as the time that Rivers employment with Intel terminated, section 17200 of the California Business and Professions Code provided and still provides: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or

weintraub **tobin** chediak coleman grodin
law corporation

1  misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500)

2  of Part 3 of Division 7 of the Business and Professions Code."

3      11.    At the time Intel required Rivers to sign the Employment Agreement as a

4  condition of his beginning employment with Intel, as well as the time that Rivers employment

5  with Intel terminated, section 17203 of the California Business and Professions Code provided

6  and still provides: "Any person who engages, has engaged, or proposes to engage in unfair

7  competition may be enjoined in any court of competent jurisdiction. The court may make such

8  orders or judgments, including the appointment of a receiver, as may be necessary to prevent

9  the use or employment by any person of any practice which constitutes unfair competition, as

10  defined in this chapter, or as may be necessary to restore to any person in interest any money

11  or property, real or personal, which may have been acquired by means of such unfair

12  competition."

13      12.    In 2008, prior to Intel requiring Rivers to sign the Employment Agreement as a

14  condition for his beginning employment with Intel, the California Supreme Court in *Edwards v.*

15  *Arthur Anderson* (2008) 44 Cal.4th 937, ruled that under Business and Professions Code

16  section 16600, any employment contract that sought to restrain an employee from engaging

17  in his or her trade was unlawful, void and unenforceable unless it fell within one of the

18  statutory exceptions to Business and Professions Code section 16600.

19      13.    None of the statutory exceptions to California Business and Professions Code

20  16600 apply to the Employment Agreement at issue here.

21      14.    Intel's requirement that Rivers sign the Employment Agreement containing the

22  Non-Solicitation Provision as a condition of his employment was unlawful and this agreement

23  and/or provision is void.  Furthermore, Intel is guilty of violating the Unfair Business Practices

24  Act set forth in California Business and Professions Code section 17200 by requiring Rivers to

25  sign the Employment Agreement with the Non-Solicitation Provision.

26      15.    Following the termination of Rivers' employment with Intel, Intel filed a

27  Complaint against Rivers in this matter, Docket # 1, filed November 27, 2018.

28      16.    In Paragraph 20 of the Complaint, Intel alleged that:

"In the Employment Agreement, Rivers promised that, for twelve months after leaving Intel, he would not directly or indirectly solicit Intel employees to leave their employment with Intel:

> I agree that for 12 (twelve) months after my employment ends, I will not solicit, directly or indirectly, any employee to leave his/her employment with Intel. This includes identifying Intel employees or providing employee compensation or skill information to any third party. I agree that any violation of this provision will result in immediate and irreparable injuries and harm to Intel, and that Intel shall have the option of pursuing all available legal or equitable remedies, including injunctive relief and specific performance."

16.     Intel also alleged in Paragraph 54 of the Complaint that:

"Intel is informed and believes and therefore alleges that Rivers directly solicited Intel employees with whom he worked on 3D XPoint to join him at Micron in violation of his promise not to solicit Intel employees for a period of 12 months, as provided in his Employment Agreement."

17.     The Second Cause of Action in Intel's Complaint was subtitled: "Breach of Contract – Non-Solicitation Agreement."

18.     Intel incorporated by reference the allegations in Paragraphs 20 and 54 set forth above into the Second Cause of Action in the Complaint.

19.     Intel alleged in Paragraph 75 of the Complaint: "In the Employment Agreement, Rivers agreed that for a period of 12 months after the end of his employment with Intel, he would refrain from directly or indirectly soliciting any Intel employee from leaving his or her employment with Intel (the "Non-Solicitation Clause.")

20.     Intel alleged in Paragraph 76 of the Complaint that: "Rivers is a computer hardware engineer, and the Non-Solicitation Clause is therefore not a meaningful restriction on Rivers' ability to practice his profession or to obtain employment in his field of expertise."

21.     Intel alleged in Paragraph 80 of the Complaint that: "Rivers breached the foregoing provisions of his Employment Agreement with Intel by, within weeks of his departure from Intel, directly soliciting Intel employees with whom he worked on 3D XPoint development to leave employment at Intel and instead work for his new employer."

///

weintraub tobin chediak coleman grodin
law corporation

22.   Intel claimed in Paragraph 90 of the Complaint that: "Rivers breached the foregoing provisions of the Employment Agreement by recruiting Intel employees to work for his new employer."

23.   On or about January 4, 2019, Rivers filed a Motion to Dismiss (Dckt. # 18) in this matter seeking to dismiss, among other things, the Second Cause of Action in the Complaint that Intel alleged against him.

24.   On or about February 7, 2019, Intel filed its Opposition to [Rivers'] Motion to Dismiss, Dckt. # 26.

25.   In its Opposition, Intel claimed that the Non-Solicitation Provision in the Employment Agreement it required Rivers to sign as a condition to his beginning employment with Intel was valid under California law and enforceable as to Rivers.

26.   On or about June 10, 2019, Intel filed its First Amended Complaint in this action, Docket # 53.

27.   While the First Amended Complaint does not contain a specific cause of action for breach of the Non-Solicitation Provision as did the Complaint, Intel has not dismissed its original Second Cause of Action for Breach of the Non-Solicitation Provision with prejudice. As a result, Rivers remains at risk of Intel seeking to enforce the unlawful Non-Solicitation Provision against him in violation of sections 16600 and 17200, et seq., of the California Business and Professions Code.

## FIRST CAUSE OF ACTION

### Violation of California Business and Professions Code sections 17200, et seq.

28.   Rivers realleges and incorporates by reference each and every fact alleged previously in Paragraphs 1 through 27 of this Counterclaim above.

29.   The Business and Professions Code provides that any person who engages, has engaged, or proposes to engage in unfair business practices may be enjoined in any court of competent jurisdiction and/or ordered to pay restitution as a result of any unfair business practices.

///

weintraub tobin chediak coleman grodin
law corporation

weintraub **tobin** chediak coleman grodin
law corporation

30.    Intel has engaged in unfair business practices as a result of engaging in the wrongdoing alleged above.  The above described acts and conduct of Intel constitutes an unlawful, unfair and fraudulent acts amounting to unfair business practices in violation of Business and Professions Code sections 17200, et seq.

31.    As a direct and proximate result of Intel's unfair business practices and the threat of such continuing unfair business practices, Rivers is entitled to a temporary restraining order and/or preliminary and/or permanent injunctive relief preventing Intel from engaging in further acts of unfair business practices.

WHEREFORE, Rivers prays for judgment as set forth below.

## SECOND CAUSE OF ACTION

### Declaratory Judgment Under Code of Civil Procedure section 1060

32.    Rivers realleges and incorporates by reference each and every fact alleged previously in paragraph 1 through 27 above.

33.    There is an actual controversy between Rivers and Intel regarding whether the Employment Agreement and/or its Non-Solicitation Provision are enforceable given that they violate section 16600 of the California Business and Professions Code.

34.    Rivers maintains that the Employment Agreement and/or its Non-Solicitation Provision are void and unenforceable under California law concerning the invalidity of noncompetition agreements as being in violation of section16600 of the California Business and Professions Code.  On the other hand, Intel maintains the validity and enforceability of such provisions in violation of section 16600 and/or 17200 of the California Business and Professions Code.

35.    Rivers seeks a declaration that Intel's use of the Employment Agreement, and its inclusion of the Non-Solicitation Provision, as a condition of employment, violates section 16600 of the California Business and Professions Code and that the Employment Agreement and/or its Non-Solicitation Provision are therefore void and unenforceable.

///

///

36.     A declaration of this Court is necessary because there is a judiciable controversy between Rivers and Intel as to their respective rights and obligations under the Employment Agreement and its Non-Solicitation Provision.

WHEREFORE, Rivers prays for judgment as set forth below.

**JURY DEMAND**

Rivers hereby demands a trial by jury for all claims to which he is so entitled

**PRAYER FOR RELIEF**

WHEREFORE, Rivers prays for judgment as follows:

1.      That plaintiff take nothing from Rivers by reason of its FAC;

2.      A temporary restraining order and/or preliminary and/or permanent injunction against Intel from engaging in further acts of unfair business practices;

3.      For a declaration that the Employment Agreement and/or its Non-Solicitation Provision violate section 16600 of the California Business and Professions Code and are therefore void and unenforceable;

4.      That Rivers recovers his costs of suit and attorney's fees incurred herein; and

5.      For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated:  August 9, 2019                    **weintraub tobin** chediak coleman grodin
                                          LAW CORPORATION


                                          By:____/s / - James Kachmar_____
                                                James Kachmar

                                          Attorneys for Defendant DOYLE RIVERS

# EXHIBIT A

# EMPLOYMENT AGREEMENT

**In exchange for being employed by Intel Corporation or any of its subsidiaries, affiliates or successors (*collectively called "Intel" in this Agreement*), I agree to the following:**

**1. General Conduct.**

I will perform my assigned Intel duties and comply with all Intel policies, procedures, guidelines, rules, and instructions, including Intel's Code of Conduct and Corporate Information Security & Security policies.

**2. Prior Third Party Information.**

I will not bring to Intel, nor use as part of my Intel work, any proprietary or confidential information of any former employer or third party without their written authorization.

**3. Confidential Information.**

During and after my Intel employment, I will hold in strict confidence and not disclose or use any Confidential Information connected with Intel business or the business of any of Intel's suppliers, customers, employees, or contractors unless (i) such disclosure or use is required in connection with my Intel work, (ii) such information becomes lawfully and publicly known outside Intel, or (iii) an Intel officer expressly authorizes such disclosure or use in advance and in writing.  For purposes of this Agreement, Confidential Information includes, without limitation: technical information (e.g. roadmaps, schematics, source code, specifications), business information (e.g. product information, marketing strategies, markets, sales, customers, customer lists or phone books), personnel information (e.g. organizational charts, employee lists, skill sets, names or phone numbers, personnel files, employee compensation) and other non-public Intel data and information of a similar nature.  I understand and agree that all Confidential Information that I acquire in connection with my Intel employment is Intel's exclusive property.  I agree to return to Intel all of its Confidential Information (hard or soft copies; originals and copies) either at the termination of my Intel employment or upon Intel's request. I agree that any violation of this provision will result in immediate and irreparable injuries and harm to Intel, and that Intel shall have the option of pursuing all available legal and equitable remedies, including injunctive relief and specific performance.

**4. Ownership of Proprietary Developments.**

Except as provided in the next sentence, I agree that all trade secrets, copyrights, mask works, trademarks, inventions (including service inventions), discoveries, designs, formulae, processes, methods, manufacturing techniques, improvements, ideas, copyrightable works, and other intellectual property which I create, invent or discover alone or with others during my Intel employment, (collectively "Proprietary Developments") are Intel's sole property from the moment of their creation, invention or discovery.  This shall not apply to an invention that I develop entirely on my own time without using Intel equipment, supplies, facilities, or trade secret information, except for those inventions that either: (1) relate at the time of conception or reduction to practice of the invention to Intel business, or actual or demonstrably anticipated research or development of the Intel; or (2) result from any work performed by me for Intel. I agree that Intel has and shall always have sole legal and equitable title to all Proprietary Developments and I have no right to compensation for such Proprietary Developments.  I agree to promptly disclose Proprietary Developments to Intel, and to the full extent allowed by law, but only to the extent not already owned by Intel pursuant to this Agreement and applicable law, hereby assign to Intel all rights in the Proprietary Developments. I agree that during and after my employment with Intel I will provide all assistance that Intel reasonably requests to secure or enforce its rights throughout the world with respect to Proprietary Developments, including signing all necessary documents to secure or memorialize those rights. If I fail or refuse to sign documents necessary to secure or enforce Intel's rights, or if Intel cannot locate me through the exercise of reasonable diligence, I irrevocably appoint Intel or its designee as my attorney to sign such documents in my name. I waive any rights that I may have in any Proprietary Developments and, to the extent that such waiver is ineffective under applicable law until a Proprietary Development is created, invented or discovered, I agree to waive such rights immediately upon the creation, invention or discovery of such Proprietary Development.

**5. Licensed and Non-Licensed Preexisting Employee Intellectual Property.**

I have listed in Appendix A any intellectual property that I own or control, in whole or in part, that I had created prior to my employment with Intel and that I intend to exclude from licensing to Intel ("Preexisting Employee Intellectual Property"). I have listed in Appendix A any Preexisting Employee Intellectual Property for which I have an economic interest in, but for which I do not have the right to grant a license to Intel. I grant Intel a non-exclusive, non-transferable (except within Intel), perpetual, irrevocable, royalty-free, world-wide license to all of my Preexisting Employee Intellectual Property, except for that which I have specifically listed in Appendix A, with the right to sublicense, to make, have made, use, sell, offer to sell, import, reproduce, have reproduced, prepare derivative works of, distribute, and otherwise dispose of, any product or document, under all patents, trade secrets, copyrights and copyrightable works, mask works, trademarks, inventions, discoveries, designs, formulae, processes, methods, manufacturing techniques, improvements, and ideas. This license only excludes the Preexisting Employee Intellectual Property I have specifically listed in Appendix A if I have provided sufficient detail to allow Intel to identify its subject matter, and Appendix A is submitted prior to the start of my employment. I agree that if I fail to make any required disclosure or breach any term of sections 4 and 5, any applicable limitations periods shall be tolled and shall not run as to any claim, right, or cause of action Intel may have relating to such disclosure or breach that would have been discovered had the required disclosure been made, until such time as Intel obtains actual knowledge of the facts giving rise to such claim. Nothing contained in this section shall limit other remedies otherwise available in law or equity to Intel.

**6. Non-solicitation.**

I agree that for 12 (twelve) months after my employment ends, I will not solicit, directly or indirectly, any employee to leave his/her employment with Intel.  This includes identifying Intel employees or providing employee compensation or skill information to any third party. I agree that any violation of this provision will result in immediate and irreparable injuries and harm to Intel, and that Intel shall have the option of pursuing all available legal or equitable remedies, including injunctive relief and specific performance.

**7. Computer Communications Are Not Private.**

I acknowledge that use of Intel's computer systems is not private or confidential. I understand and consent to Intel's right to review any communications to or from my work computer, pager, phone or other electronic device and all computer information, including any password-protected employee communications.

**8. Miscellaneous.**

I understand that if Intel Corporation is not my Employer, Intel is signing this Agreement as agent for the Intel Group company that is my Employer. I understand and agree that my employment with Intel is "at will." This means that both Intel and I have the right to terminate my employment at any time, with or without advance notice and with or without cause (provided, however, that if I become employed by Intel in a non-U.S. location, local termination law will apply if inconsistent with this Agreement). The Agreement's terms and conditions are severable. If any part of this Agreement is found or held to be unenforceable in any jurisdiction in which this Agreement is being performed, such provision shall be enforced to the greatest extent permitted by law, and the remainder of this Agreement and such provision as applied to other persons, places or circumstances shall remain in full force and effect. This Agreement: (a) survives my employment with Intel; (b) inures to the benefit of successors and assigns of Intel; and (c) is binding upon my heirs, assigns, and legal representatives.  I am not a party to any other agreement which will interfere with my full compliance with this Agreement, except as I have specifically identified in this Agreement. This Agreement may not be modified or amended except in writing, signed by the parties. Only the Vice President of Human Resources, Intel Corporation, or the General Counsel of Intel Corporation, or their delegate, has the authority to modify this agreement on behalf of Intel. This Agreement is effective the first day of my employment with Intel, and supersedes any prior Employee Agreement signed by me with Intel. I have carefully read all of the provisions of this Agreement and I understand and will fully and faithfully comply with all provisions.

**Intel Corporation**

A. Douglas Melamed
General Counsel

**Employee**

Doyle Rivers
Signature

Doyle Rivers
Printed Name & WWID # (please print clearly)

9/18/10
Date

Distribution: **White Copy** –US Records CH2-171 **Yellow Copy** – Employee **Pink Copy** – CH2-171

EmploymentAgreement.DOC (rev. 4/2010)