GREGORY P. STONE (State Bar No. 78329)
gregory.stone@mto.com
JEREMY K. BEECHER (State Bar No. 301272)
Jeremy.beecher@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
carolyn.luedtke@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

Attorneys for Plaintiff Intel Corporation

CHARLES T. GRAVES (State Bar No. 197923)
tgraves@wsgr.com
AMIT Q. GRESSEL (State Bar No. 307663)
agressel@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza, Spear Tower, Suite 3300
San Francisco, California 94105
Telephone:     (415) 947-2000
Facsimile:     (415) 947-2099

Attorneys for Non-Party
Micron Technology, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| INTEL CORPORATION,<br><br>       Plaintiff,<br><br>   vs.<br><br>DOYLE RIVERS, an individual, and DOES 1 through 10, inclusive,<br><br>       Defendants. | Case No. 2:18-cv-03061-MCE-AC<br><br>**JOINT STATEMENT OF DISCOVERY DISAGREEMENT**<br><br>Judge:   Hon. Allison Claire<br>Date:    September 11, 2019<br>Time:    10:00 a.m.<br>Crtrm.:  26 |

42314035.1

# TABLE OF CONTENTS

**Page**

I.     NATURE OF THE ACTION AND RELEVANT FACTUAL DISPUTES ........................1

    A.     Intel's Statement...................................................................................................1

          1.     Rivers' Work on Intel's Revolutionary 3D XPoint Memory........................1

          2.     Rivers Downloads Intel Confidential and Trade Secret Files ......................2

          3.     Rivers Attempts to Conceal the Evidence of His Misappropriation ..............3

          4.     Judge England Grants a TRO and Stipulated Preliminary Injunction and Intel Discovers More Evidence Destruction............................................3

          5.     Rivers Solicits Intel Employees to Depart Intel for Micron...........................4

          6.     Intel's Document Subpoena to Micron .........................................................4

    B.     Micron's Statement .............................................................................................4

II.     PARTIES' EFFORTS TO MEET AND CONFER.................................................................6

    A.     Intel's Statement on Meet and Confer...............................................................6

    B.     Micron's Statement on Meet and Confer ...........................................................6

III.     DOCUMENT REQUESTS AT ISSUE.......................................................................7

    A.     Requests Nos. 1-4, 10.........................................................................................7

    B.     Intel's Argument Regarding Document Requests Nos. 1-4 and 10 ........................17

    C.     Micron's Argument Regarding Document Requests Nos. 1-4 and 10...................19

    D.     Document Requests Nos. 5, 6 and 11................................................................21

    E.     Intel's Arguments Regarding Document Requests Nos. 5, 6 and 11 ......................24

    F.     Micron's Arguments Regarding Document Requests Nos. 5, 6 and 11.................26

    G.     Document Request No. 7 ..................................................................................27

    H.     Intel's Arguments Regarding Document Request No. 7........................................28

    I.     Micron's Arguments Regarding Document Requests No. 7................................28

    J.     Document Request No. 9 ..................................................................................29

    K.     Intel's Arguments Regarding Document Request No. 9........................................30

    L.     Micron's Arguments Regarding Document Request No. 9 ...................................32

-i-
JOINT STATEMENT OF DISCOVERY DISAGREEMENT

# TABLE OF CONTENTS
## (Continued)

Page

M.      Document Request No. 12 .......................................................................34

N.      Intel's Arguments Regarding Document Request No. 12........................................35

O.      Micron's Arguments Regarding Document Request No. 12 ...................................36

JOINT STATEMENT OF DISCOVERY DISAGREEMENT

Plaintiff Intel Corporation ("Intel") and Non-Party Micron Technology, Inc. ("Micron") respectfully submit this Joint Statement of Discovery Disagreement pursuant to Local Rule 251.

## I.     NATURE OF THE ACTION AND RELEVANT FACTUAL DISPUTES

### A.     Intel's Statement

This is a case about an Intel employee, Defendant Doyle Rivers ("Rivers") who stole confidential and trade secret Intel information on his way out the door to work for a competitor, Micron, and then took extreme actions to destroy evidence to cover his tracks.  Intel seeks third party discovery from Micron related to Rivers' taking and use of confidential and trade secret information and Micron's involvement in responding to Intel's request for the stolen information to be returned.  Judge England has granted a temporary restraining order and preliminary injunction against Rivers and recently denied Rivers' motion to dismiss. ECF Nos. 36, 47, 61.  At the preliminary injunction hearing, Judge England described Rivers' conduct as "terrible," and noted that even without discovery and with the limited preliminary information available, Rivers was "in a world of hurt."  *See* Declaration of Carolyn Hoecker Luedtke ("Luedtke Decl.") Ex. B at 14:6 & 17:20-22.  Since then, Intel has endeavored to seek discovery to build out the full extent of Rivers' wrongdoing.

To that end, Intel served a document subpoena on Micron in April, but Micron refused to produce anything until a few days before this joint statement was due, when Micron produced a mere two emails.  Micron continues to refuse to search any custodian other than Rivers on the basis of undue burden, yet it refuses to explain specifics of its burden.  Micron has dragged its feet for months responding to the subpoena, including letting more than a month pass while it ignored Intel's repeated meet and confer efforts, only ultimately responding when Intel noticed this motion.  Intel needs to get Micron's production to move forward prosecuting this case.

#### 1.     Rivers' Work on Intel's Revolutionary 3D XPoint Memory

Rivers worked for Intel from 2010 to 2018 as an engineering manager.  In that role, he helped Intel develop 3D XPoint, a revolutionary new type of memory technology in which Intel has invested over a billion dollars and which Intel was developing jointly with Micron.  Rivers also helped Intel integrate 3D XPoint into Intel's own proprietary Optane™-branded solid-state

1  drive ("SSD") memory products.  Intel's Optane™ SSD products are *not* jointly developed with

2  Micron, and the companies actively compete in the SSD marketplace.

3     As an engineering manager, Rivers had access to confidential Intel information about both

4  3D XPoint and Optane™.  Rivers also had access to confidential information about Intel's highly

5  valued employees with specialized, and extremely rare, knowledge about these technologies.

6          **2.     Rivers Downloads Intel Confidential and Trade Secret Files**

7     In September 2018, Rivers began work at Micron as a Vice President of 3D XPoint

8  Engineering.  Intel discovered after Rivers' departure to Micron that Rivers had broken his

9  promises to return Intel's confidential and trade-secret information at the end of his employment.

10    Specifically, a forensic examination of Rivers' Intel-issued laptop revealed that late on the

11 night before he left his employment with Intel, Rivers plugged a removable storage device ("the

12 USB Device") into his Intel-issued laptop and kept it plugged in for at least an hour.  *See*

13 Declaration of Michael Hanada in Support of Intel's Motion for Preliminary Injunction ("Hanada

14 Decl."), ECF No. 10-5, ¶ 4.  During that hour, Rivers downloaded to the USB Device a highly

15 confidential, trade secret Intel file, "OrgTreeFlat_List.xlsx," that contained a confidential

16 compilation of personnel information (including but not limited to, full names, title, organization

17 level, email, location, phone, cell, hire/start date and length of service) for over 3,000 Intel

18 employees.  *Id*.  This followed Rivers' attempt, a few nights before, to download onto the USB

19 Device a file classified as "Intel Top Secret" pertaining to Intel's implementation of 3D XPoint

20 technology in its Optane™ products.  *Id*. at ¶¶ 6, 9.  That download attempt was blocked by Intel's

21 Data Loss Prevention program.  *Id*.  Based on Rivers' activity using the USB Device for at least an

22 hour on the night of September 9, 2018, and his blocked attempt to download an "Intel Top

23 Secret" file, Intel's forensic examiner concluded Rivers likely downloaded additional confidential

24 or trade-secret Intel files related to 3D XPoint or Optane™ products.  *Id*. at ¶ 9.

25    Discovery from Rivers has confirmed his misappropriation.  He has *admitted* in sworn

26 discovery responses that he downloaded trade-secret and confidential files containing: (1)

27 confidential information regarding *thousands* of Intel employees; (2) *salary and bonus*

28 information for 31 Intel Non-volatile Memory Solution Group employees—including employees

Intel believes Rivers recruited to his new employer; and (3) a highly sensitive, proprietary tool containing data pertaining to Intel SSD products still under development and not yet released.  *See* Luedtke Decl. Ex. D.

### 3.   Rivers Attempts to Conceal the Evidence of His Misappropriation

After Intel learned of Rivers' downloads of Intel trade-secret and confidential information, it emailed him on October 2, 2018 to demand he immediately return the USB Device without deleting or destroying information on it so Intel could investigate the wrongdoing.  *Id*.. Ex. A. Intel provided a courtesy copy of that correspondence to Micron.  *Id.*  ¶ 2.  Rivers did not respond; instead of returning the USB Device to Intel as requested, he gave it to Micron, which, after discussion with Intel, provided it to an agreed-upon third-party forensics expert.  Luedtke Decl. ¶¶ 3, 5.  Upon inspection, the third party forensics expert determined that the contents of the USB Device had been deleted.  Luedtke Decl. ¶ 7; *id*. Ex. B.

### 4.   Judge England Grants a TRO and Stipulated Preliminary Injunction and Intel Discovers More Evidence Destruction

On February 7, 2019, Judge England issued a temporary restraining order against Rivers and ordered him to provide his home computer for forensic inspection by Intel.  Docket No. 36.

The results of that inspection were startling: Rivers took extraordinary measures to destroy evidence to cover his tracks after downloading the Intel files.  Specifically, Rivers employed *six* overlapping anti-forensic applications on his computer and the USB Device designed to permanently delete and encrypt data and conceal internet activity.  *See* Luedtke Decl. Ex. C at 9. Rivers undertook some of this activity after receiving correspondence from Intel asking him to return and not alter the USB Device, and he undertook some of this activity even *after litigation began*.  *See id.* (showing CCleaner last used January 20, 2019).

Further, Rivers conducted mass file deletion on his home computer hard drive prior to the forensic inspection, preventing the forensic investigator from being able to determine what files were there previously.  *See id.* Ex. C at 11.  Rivers also downloaded to his home computer an executable application called "TOR Browser," an internet browser designed to hide the IP address of the user's computer, and to hide the user's search history.  *See id* at 9.

-3-

1       Faced with the overwhelming evidence of wrongdoing, Rivers stipulated to the preliminary

2 injunction requested by Intel.  Docket No. 47.

3             **5.**       **Rivers Solicits Intel Employees to Depart Intel for Micron**

4       Rivers has admitted in discovery that, in the months before his departure from Intel, he

5 took Intel confidential files pertaining to employees with whom he worked on 3D XPoint.  *See*

6 Luedtke Decl. Ex. D.  At least some of the Intel employees Rivers solicited did, in fact, leave Intel

7 and join Rivers at Micron.  Intel alleges that Rivers solicited these Intel employees to join him at

8 Micron using Intel confidential and/or trade-secret information that he admits he took, including

9 information pertaining to these employees' technical capabilities, performance review history, and

10 salary and bonus information, some of which Rivers has admitted in discovery to taking with him

11 from Intel upon his departure.  *See* First Amended Complaint, ECF No. 53, ¶¶ 64-65.  Rivers

12 moved to dismiss the complaint containing these allegations, and Judge England denied the

13 motion.  ECF No. 61.

14             **6.**       **Intel's Document Subpoena to Micron**

15       Against this backdrop, on April 12, 2019, Intel served a document subpoena ("the

16 Subpoena") on Micron.  *See* Luedtke Decl. Ex. E.  On April 26, 2019, Micron responded to Intel's

17 Subpoena.  *See* Luedtke Decl. Ex. F.  Micron refused to produce any documents and offered a

18 slew of largely boilerplate objections.  On July 18, 2019 after meet and confer, Micron agreed to

19 modify its position on some of the requests and stated that it had reviewed documents that it would

20 be producing; on other topics, Micron has refused to modify its objections.  Intel did not, however,

21 receive the promised production or the supplemental written responses despite multiple efforts at

22 follow-up in the weeks that followed.  *See* Luedtke Decl. ¶¶ 28-29.  Finally, on Friday August 30,

23 2019—two business days before this Joint Statement was due—Micron provided supplemental

24 responses and produced two emails, which it states is the universe of responsive, non-privileged

25 documents it will agree to produce.

26       **B.**     **Micron's Statement**

27       This subpoena comes at the end of a ten-year joint development project between Intel and

28 Micron for "3D XPoint" technology.  As that collaborative project has wound down, some

1   employees of each company have unsurprisingly sought employment at the other.  Micron has

2   hired employees from Intel.  Intel has hired employees from Micron.

3         Mr. Rivers was one such employee.  Mr. Rivers previously worked at Micron from 2001 to

4   2010 in a prior joint venture between Micron and Intel.  Rivers was then recruited by Intel where

5   he worked from 2010 through 2018.  He left Intel in August 2018, and worked at Micron until

6   February 2019.  Micron's lawsuit against Mr. Rivers centers on his admitted downloading, and

7   subsequent deletion of, files on a home computer originating from his Intel employment.   When

8   Intel alerted Micron in October 2018, Micron voluntarily conducted intensive searches to

9   determine whether Mr. Rivers had uploaded or otherwise conveyed such files (putting aside

10  whether they contain trade secrets or not) into Micron or its computer systems.  When Intel later

11  requested that Micron conduct additional searches using a list of hundreds of file titles that Intel

12  provided, Micron agreed.  Indeed, even after Micron searched email, computers, Mr. Rivers'

13  company phone, and other sources (as set forth at length in its detailed subpoena responses, Ex. E

14  to Luedtke Declaration (original responses to Intel subpoena) and Ex. O to Luedtke Declaration

15  (supplemental responses to Intel's subpoena), and the declaration at ECF 14) and found nothing,

16  this summer Intel requested that Micron have a third party vendor perform "fuzzy hash" searches

17  on the thesis (not based on any evidence) that Mr. Rivers perhaps changed some portion of files

18  and then surreptitiously uploaded them.  Although that fanciful theory is beyond the bounds of a

19  third-party subpoena, Micron has agreed to do so, hiring a vendor at its own cost.

20        Despite search efforts that far exceed the norm, conducted in cooperation and good faith,

21  that have turned up zero relevant files, Intel is still demanding more.  The current dispute comes

22  because even though there is no sign that Mr. Rivers uploaded a single one of the files at issue,

23  Intel now says Micron must search the email records of at least ten of his former co-workers at

24  Micron, and conduct even more searches in Micron's general servers that Mr. Rivers could have

25  had theoretical access to.   This has now gone too far, as the cost, time, and burdens imposed on

26  Micron are already far too much, and conducting even more costly, burdensome searches that may

27  not even be technically possible for non-existent files serves no purpose in this case.

28

1  **II.     PARTIES' EFFORTS TO MEET AND CONFER**

2        **A.     Intel's Statement on Meet and Confer**

3        On May 28, 2019, Intel sent Micron a letter responding to Micron's objections to Intel's

4  Subpoena.  *See* Luedtke Decl. Ex. G.  The parties then met and conferred telephonically on June

5  17, 2019.  For the most part, Micron's counsel could not explain the basis for the various

6  objections.  *See* Luedtke Decl. ¶¶ 17-18.

7        After that call, Intel proposed search terms and custodians as a starting point for Micron to

8  consider in conducting its own reasonable investigation.  Luedtke Decl. ¶ 19 & Ex. I.  Micron

9  responded on June 20, 2019 that it would be modifying its responses to the subpoena and

10  conducting additional (unspecified) searches.  *Id.* ¶ 22, *id.* Ex. K.  Intel followed up trying to get a

11  response from Micron, who finally responded on July 18 and agreed to produce some documents,

12  to provide supplemental written responses, and refused to modify its position on some categories.

13  *Id.* ¶¶ 23-24.  Intel followed up repeatedly—this time for nearly six weeks—seeking the promised

14  document production and supplemental responses, but Micron ignored all inquiries and provided

15  nothing.  Luedtke Decl. ¶¶ 25-28 & Ex. M.   It was not until August 29, 2019—after Intel noticed

16  this motion to compel and three business days before this Joint Statement was due—that Micron

17  responded and provided supplemental written discovery responses and produced two emails.

18  Luedtke Decl. ¶¶ 29-30, Exs. O.

19        **B.     Micron's Statement on Meet and Confer**

20         Intel served this subpoena on Micron on April 12, 2019, based on the causes of action

21  seen in its original Complaint against Defendant Rivers.  By then, and as set forth in its responses

22  and a December 2018 declaration (ECF 14), Micron had already conducted extensive and

23  voluntary searches to find out whether Mr. Rivers had uploaded or conveyed any files taken from

24  his Intel employment to Micron – and determined that he had not done so.  Nevertheless, Intel

25  asked Micron to conduct even more burdensome searches, and Micron agreed.  The parties

26  disagreed on some issues, met and conferred after Micron responded in April, and Micron

27  responded again – with lengthy responses detailing its unusually intensive search efforts – on

28  August 29.

Given Micron's searches and absence of any sign that Mr. Rivers transferred Intel files to Micron, that left only a few, collateral issues where the parties disagree.  One of them concerns Intel's unlawful effort to gain intelligence about Micron recruiting and hiring, by seeking information about hiring efforts that are immune from liability under California law.  The others concern demands for duplicative searches where Micron has already expended massive and unusual efforts, only to find no uploading by Mr. Rivers.  These issues are set forth below.

## III. DOCUMENT REQUESTS AT ISSUE

### A. Requests Nos. 1-4, 10

Requests Nos. 1-4 and 10 all relate to Intel documents or information that Rivers potentially brought to Micron.  Because the requests encompass similar subject matter, the parties set forth these requests and responses together.

**Document Request No. 1**

All non-public Intel Documents in Micron's possession, custody, or control that were provided to or obtained by Micron, directly or indirectly, from Defendant Doyle Rivers from August 1, 2018 through the present.  For clarity, this includes any non-public Intel Document that Rivers uploaded to any Micron computer, server, or network or emailed to any Micron employee.

**Micron's Response to Document Request No. 1**

Micron objects to the response to the extent it calls for information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege.

Micron objects to this request as unduly burdensome because, as Micron detailed in its December 27, 2018 opposition to Intel's request to serve expedited discovery (ECF 14) and the associated Declaration of J.R. Tietsort, Micron has previously conducted a number of searches (including at Intel's behest) for such documents. Micron declines to repeat searches already conducted. Micron also objects to this request as assuming facts not in evidence, because (so far as Micron is aware), there are no allegations, and no evidence, in the underlying litigation that Mr. Rivers shared, uploaded, emailed, or otherwise transferred any Intel document originating from his employment at Intel to Micron computer systems when he was employed by Micron.

Notwithstanding these objections, and pursuant to Intel's new request, Micron undertook a

1   reasonably diligent search of the phone that it had issued to Mr. Rivers during his employment at

2   Micron, and did not find documents originating from Mr. Rivers' employment at Intel.

3       Subject to these objections, and based on a reasonably diligent search effort, Micron

4   responds that no such documents exist.

5   **Micron's Supplemental Response to Document Request No. 1**

6       Micron restates and incorporates its original objections.

7       As a supplemental response, Micron provides the following details of searches conducted

8   in October, November, and December of 2018 (as previously detailed in the Declaration of J.R.

9   Tietsort, ECF 14), as well as searches conducted after meeting-and-conferring with counsel for

10  Intel after April 26, 2019.

11      In October of 2018, personnel on Micron's security team, working at the direction of

12  Micron's then Chief Information Security Officer, J.R. Tietsort, conducted various searches within

13  Micron to determine if Mr. Rivers had uploaded or otherwise stored any files that potentially

14  originated from his employment at Intel, or more generally any file from outside Micron, onto

15  Micron devices or computer systems. Micron did so voluntarily upon learning of Intel's concerns

16  regarding Mr. Rivers. These searches included searching through Data Loss Prevention ("DLP")

17  logs for any indication that Mr. Rivers connected a SanDisk Cruzer 64 GB device with a serial

18  number 4C531001610826109343, as identified by Intel's security representatives. Micron's

19  security team also searched DLP logs across the larger Micron environment and found no

20  indication that this drive was connected.

21      In November of 2018, Micron's security team reviewed all previous and ongoing web and

22  email traffic for Mr. Rivers for any file attachments, or content that could potentially contain

23  confidential Intel material originating from Mr. Rivers' employment at Intel. Micron also

24  reviewed web logs and file transfer URLs for any indication of file transfers. Micron also

25  specifically reviewed the names of all file attachments that were detected for any potential

26  matches to the file names provided by Intel. Micron found no evidence that Mr. Rivers transferred

27  any suspicious files (including any files originating from his employment/departure at Intel) into

28  Micron's environment as a result of these searches and active monitoring. Micron also exported

1    Mr. Rivers' emails as a .PST file and ran a search for the hash files provided by Intel. No matches

2    were found. Micron also installed security software, EnCase agent, on Mr. Rivers' laptop and

3    performed a "sweep enterprise" which allowed Micron to check for artifacts and traces of any

4    previous USB connections. Micron found no evidence of any suspicious USB connections.

5    Micron also collected a repository of Mr. Rivers' cloud storage account through Microsoft

6    OneDrive and ran a search for the hash values that Intel had provided. Micron found no evidence

7    of any of the files Intel identified. Micron also reviewed system artifacts including "link" files that

8    represent histories of any drives being connected to Mr. Rivers' Micron laptop. Again, Micron

9    found no evidence of the USB drive being connected to Mr. Rivers' Micron laptop.

10           In December of 2018, Micron continued its active monitoring of Mr. Rivers' activity.

11   Micron also ran a full file name search for 189 file names received from Intel on a system image

12   of Mr. Rivers' Micron laptop, as well as a hash value search of every file Intel requested. Again,

13   Micron found no evidence or indicia of any Intel files on Mr. Rivers' Micron laptop or cloud

14   storage. Micron also reviewed possible locations where Mr. Rivers' may have loaded files onto

15   Micron servers. Using artifacts from Mr. Rivers' profile and laptop (such as link files, and logging

16   of Mr. Rivers' laptop use via the EnCase security software) Micron found no evidence that Mr.

17   Rivers' loaded any Intel files to any Micron shared servers. Micron also searched additional log

18   sources and monitored Mr. Rivers through additional means on an ongoing basis.

19           In response to Intel's April 12, 2019 subpoena, Micron confirmed again that there was no

20   indication of any introduction of Intel confidential files by Mr. Rivers into Micron's environment

21   by re-reviewing the system logs, email monitoring, and search results from Micron's security

22   team, and re-confirming the findings from above. Micron also compared the requested hash value

23   searches against Mr. Rivers' Micron issued cell phone and found no matches.

24           After engaging in a meet-and-confer with counsel for Intel, Micron also exported all of Mr.

25   Rivers' emails and conducted key word searches proposed by Intel's counsel on Mr. Rivers'

26   email. Micron also conducted keyword searches on an index of Mr. Rivers' laptop. No documents

27   responsive to this request were found.

28           As a result of these efforts, Micron has been able to determine that Mr. Rivers did not

1   upload or otherwise introduce any Intel Confidential files into the Micron environment. Micron

2   therefore will not conduct additional searches for various searches terms across other custodians or

3   its wider servers as such efforts are unnecessary and not reasonably calculated to lead to the

4   discovery of admissible evidence—particularly given the depth and breadth of Micron's efforts to

5   date.

6                          **Document Request No. 2**

7          All non-public Intel Documents in Micron's possession, custody, or control that relate to or

8   concern any of the following categories of Intel information identified by Doyle Rivers on his

9   Intel Trade Secret Acknowledgement Form on September 10, 2018 as categories of confidential

10  and trade secret information to which he had access at Intel:

11       • Intel's financial and pricing information for Intel" s Optane™ product;

12       • Intel's customer specific pricing strategies for Optane™;

13       • Intel's business and new product plans, objectives, and strategies for Optane™,

14       • Intel's customer and vendor lists. contacts, habits, and plans for Optane™,

15           including customers targets and vendors;

16       • Intel's marketing information concerning Optane™ and strategy reviews from an

17           engineering perspective;

18       • Intel's Documents concerning yields, designs, efficiencies, and capabilities of

19           production methods, facilities and systems for 3D XPoint and Optane™ (solid state

20           drive solutions);

21       • Intel's patent applications related to 3D XPoint and Optane™;

22       • Intel's product designs and specifications, such as Test Tapes, Schematics,

23           Database Tapes, or other, for the following Intel products: Optane™ (solid state

24           drives), 3D XPoint component test tapes and schematics; and

25       • Business group information for Intel, including personnel lists, organizational

26           structure, identities, skills, experience, WWIDs, compensation and location of Intel

27           personnel.

28

42314035.1

JOINT STATEMENT OF DISCOVERY DISAGREEMENT

1   **Micron's Supplemental Response to Document Request No. 2**

2   (Same as Micron's Supplemental Response to Document Request No. 1)

3   **Document Request No. 3**

4   A spreadsheet entitled "OrgTreeFlat_ List.xlsx" (a list of more than 3,000 Intel employee

5   names) that would have been uploaded by or transmitted by Doyle Rivers on or after September 9,

6   2018 and all Documents containing variations, revisions, portions, and excerpts of the spreadsheet

7   or reflecting any information derived from the spreadsheet.

8   **Micron's Response to Document Request No. 3**

9   Micron objects to the response to the extent it calls for information protected by the

10  attorney-client privilege, work-product doctrine, or any other applicable privilege.

11  Micron objects to the wording of the request as to "uploaded or transmitted" because Intel

12  has made no allegation that Mr. Rivers "uploaded or transmitted" this file to any device or

13  computer system owned by Micron.

14  Micron objects to this request as unduly burdensome because, as Micron detailed in its

15  December 27, 2018 opposition to Intel's request to serve expedited discovery (ECF 14) and the

16  associated Declaration of J.R. Tietsort, Micron has previously conducted a number of searches

17  (including at Intel's behest) for such documents. Micron declines to repeat searches already

18  conducted.  Micron also objects to this request as assuming facts not in evidence, because (so far

19  as Micron is aware), there are no allegations, and no evidence, in the underlying litigation, that

20  Mr. Rivers shared, uploaded, emailed, or otherwise transferred any Intel document originating

21  from his employment at Intel to Micron computer systems when he was employed by Micron.

22  Notwithstanding these objections, and pursuant to Intel's new request, Micron undertook a

23  reasonably diligent search of the phone that it had issued to Mr. Rivers during his employment at

24  Micron, and did not find documents originating from Mr. Rivers' employment at Intel.

25  Subject to these objections, and based on a reasonably diligent search effort, Micron

26  responds that no such documents exist.

27  **Micron's Supplemental Response to Document Request No. 3**

28  Micron restates and incorporates its original objections.

1    As a supplemental response, Micron provides the following details of searches conducted

2    in October, November, and December of 2018 (as previously detailed in the Declaration of J.R.

3    Tietsort, ECF 14), as well as searches conducted after meeting-and-conferring with counsel for

4    Intel after April 26, 2019.

5    In October of 2018, personnel on Micron's security team, working at the direction of

6    Micron's then Chief Information Security Officer, J.R. Tietsort, conducted various searches within

7    Micron to determine if Mr. Rivers had uploaded or otherwise stored any files that potentially

8    originated from his employment at Intel, or more generally any file from outside Micron, onto

9    Micron devices or computer systems. Micron did so voluntarily upon learning of Intel's concerns

10   regarding Mr. Rivers. These searches included searching through Data Loss Prevention ("DLP")

11   logs for any indication that Mr. Rivers connected a SanDisk Cruzer 64 GB device with a serial

12   number 4C531001610826109343, as identified by Intel's security representatives. Micron's

13   security team also searched DLP logs across the larger Micron environment and found no

14   indication that this drive was connected.

15   In November of 2018, Micron's security team reviewed all previous and ongoing web and

16   email traffic for Mr. Rivers for any file attachments, or content that could potentially contain

17   confidential Intel material originating from Mr. Rivers' employment at Intel. Micron also

18   reviewed web logs and file transfer URLs for any indication of file transfers. Micron also

19   specifically reviewed the names of all file attachments that were detected for any potential

20   matches to the file names provided by Intel. Micron found no evidence that Mr. Rivers transferred

21   any suspicious files (including any files originating from his employment/departure at Intel) into

22   Micron's environment as a result of these searches and active monitoring. Micron also exported

23   Mr. Rivers' emails as a .PST file and ran a search for the hash files provided by Intel. No matches

24   were found. Micron also installed security software, EnCase agent, on Mr. Rivers' laptop and

25   performed a "sweep enterprise" which allowed Micron to check for artifacts and traces of any

26   previous USB connections. Micron found no evidence of any suspicious USB connections.

27   Micron also collected a repository of Mr. Rivers' cloud storage account through Microsoft

28   OneDrive and ran a search for the hash values that Intel had provided. Micron found no evidence

of any of the files Intel identified. Micron also reviewed system artifacts including "link" files that represent histories of any drives being connected to Mr. Rivers' Micron laptop. Again, Micron found no evidence of the USB drive being connected to Mr. Rivers' Micron laptop.

In December of 2018, Micron continued its active monitoring of Mr. Rivers' activity. Micron also ran a full file name search for 189 file names received from Intel on a system image of Mr. Rivers' Micron laptop, as well as a hash value search of every file Intel requested. Again, Micron found no evidence or indicia of any Intel files on Mr. Rivers' Micron laptop or cloud storage. Micron also reviewed possible locations where Mr. Rivers' may have loaded files onto Micron servers. Using artifacts from Mr. Rivers' profile and laptop (such as link files, and logging of Mr. Rivers' laptop use via the EnCase security software) Micron found no evidence that Mr. Rivers' loaded any Intel files to any Micron shared servers. Micron also searched additional log sources and monitored Mr. Rivers through additional means on an ongoing basis.

In response to Intel's April 12, 2019 subpoena, Micron confirmed again that there was no indication of any introduction of Intel confidential files by Mr. Rivers into Micron's environment by re-reviewing the system logs, email monitoring, and search results from Micron's security team, and re-confirming the findings from above. Micron also compared the requested hash value searches against Mr. Rivers' Micron issued cell phone and found no matches.

After engaging in a meet-and-confer with counsel for Intel, Micron also exported all of Mr. Rivers' emails and conducted key word searches proposed by Intel's counsel on Mr. Rivers' email. Micron also conducted keyword searches on an index of Mr. Rivers' laptop. No documents responsive to this request were found.

As a result of these efforts, Micron has been able to determine that Mr. Rivers did not upload or otherwise introduce any Intel Confidential files into the Micron environment. Micron therefore will not conduct additional searches for various searches terms across other custodians or its wider servers as such efforts are unnecessary and not reasonably calculated to lead to the discovery of admissible evidence—particularly given the depth and breadth of Micron's efforts to date.

Micron has now searched for this specific document multiple times: (1) when Intel first

1    identified the document as one of concern in November of 2018, (2) when Micron examined Mr.

2    Rivers' laptop and phone for the hash files Intel identified, (3) through these additional searches,

3    and [possibly: (4) by running Intel's requested fuzzy hash search on Mr. Rivers' laptop and

4    phone]. Given the above there is no plausible need for Micron to also search through additional

5    custodians and shared network drives, as Micron has established through its extensive searches

6    that Mr. Rivers did not introduce this file into the Micron environment.

7                          **Document Request No. 4**

8                 All Documents created after August 1, 2018 that constitute or refer to communications

9    with or by Doyle Rivers about non-public Intel information or Documents that relate to or concern

10   any of the following categories of Intel information identified by Doyle Rivers on his Intel Trade

11   Secret Acknowledgement Form on September 10, 2018 as categories of confidential and trade

12   secret information to which he had access at Intel:

13   - Intel's financial and pricing information for Intel's Optane™ product;

14   - Intel's customer specific pricing strategies for Optane™;

15   - Intel's business and new product plans, objectives, and strategies for Optane™;

16   - Intel's customer and vendor lists, contacts, habits, and plans for Optane™,
17     including customers targets and vendors;

18   - Intel's marketing information concerning Optane™ and strategy reviews from an
19     engineering perspective;

20   - Intel's Documents concerning yields, designs, efficiencies, and capabilities of
21     production methods, facilities and systems for 3D XPoint and Optane™ (solid state
22     drive solutions);

23   - Intel's patent applications related to 3D XPoint and Optane™;

24   - Intel's product designs and specifications, such as Test Tapes, Schematics,
25     Database Tapes, or other, for the following Intel products: Optane™, (solid state
26     drives), 3D XPoint component test tapes and schematics; and

27   - Business group information for Intel, including personnel lists, organizational
28     structure, identities, skills, experience, WWIDs, compensation and location of Intel

1    personnel.

2    **Micron's Response to Document Request No. 4**

3    Micron objects to the response to the extent it calls for information protected by the

4    attorney-client privilege, work-product doctrine, or any other applicable privilege.

5    Micron objects to this request because it is vastly overbroad, and not reasonably tethered to

6    the specific allegations Intel has made against Mr. Rivers in the underlying litigation. Micron and

7    Intel shared resources for nearly a decade as the result of a Joint Development Project, including

8    as to the 3D XPoint JDP. Both Micron and Intel have certain rights, as agreed upon, to

9    information generated from that JDP, including as to 3D XPoint. This request, as written, would

10   encroach upon materials based on the parties' joint work, and having no connection to the

11   allegations Intel has brought against Mr. Rivers relating to his departure from his employment at

12   Intel. Micron declines to conduct costly and burdensome searches just because Intel's exit form

13   generally categorizes documents relating to certain areas in which Micron and Intel have worked

14   together for many years.

15   Micron accordingly interprets this request within the scope of the allegations Intel has

16   made against Mr. Rivers relating to his departure from his employment at Intel, and in that light

17   treats this request as asking Micron to search to determine whether Mr. Rivers shared, uploaded,

18   emailed, or otherwise transferred documents originating from his employment at Intel to Micron.

19   Micron objects to this request, as so construed, as unduly burdensome because, as Micron

20   detailed in its December 27, 2018 opposition to Intel's request to serve expedited discovery (ECF

21   14) and the associated Declaration of J .R. Tietsort, Micron has previously conducted a number of

22   searches (including at Intel's behest) for such documents. Micron declines to repeat searches

23   already conducted. Micron also objects to this request as assuming facts not in evidence. because

24   (so far as Micron is aware), there are no allegations, and no evidence, in the underlying litigation

25   that Mr. Rivers shared, uploaded, emailed, or otherwise transferred any Intel document originating

26   from his employment at Intel to Micron computer systems when he was employed by Micron.

27   Micron further objects to this request as overly broad, burdensome, and not reasonably calculated

28   to lead to the discovery of admissible evidence.

1    Notwithstanding these objections, and pursuant to Intel's new request, Micron undertook a

2    reasonably diligent search of the phone that it had issued to Mr. Rivers during his employment at

3    Micron, and did not find documents originating from Mr. Rivers' employment at Intel.

4    Subject to these objections, and to the extent this Request overlaps with Requests 1-3, and

5    based on a reasonably diligent search effort, Micron responds that no such documents exist. To the

6    extent Intel seeks communications within Micron (if any exist) regarding the existence or non-

7    existence of such documents in general, Micron objects to the request as it would, to that extent,

8    call for the production of documents subject to privilege and/or work product protection. Micron

9    declines to produce privileged documents otherwise within the scope of the request.

10    **Micron's Supplemental Response to Document Request No. 4**

11    (Same as Micron's Supplemental Response to Document Request No. 1)

12    **Document Request No. 10:**

13    All Documents reflecting or referencing the following files:  "Focal_DSHB_Detaill.xlsx,"

14    containing personnel information regarding Intel employees; "dpm_calc_sheet," a tool for

15    calculating system fail rates and containing information about Intel SSD products; and

16    "ECC_Calc.xlsm" and "ECC_Calc.xlsx," a tool used for calculating bit error rates.

17    **Micron's Response to Document Request No. 10:**

18    Micron objects to the response to the extent it calls for information protected by the

19    attorney-client privilege, work-product doctrine, or any other applicable privilege.

20    Micron objects to this request as unduly burdensome because, as Micron detailed in its

21    December 27, 2018 opposition to Intel's request to serve expedited discovery (ECF 14) and the

22    associated Declaration of J.R. Tietsort, Micron has previously conducted a number of searches

23    (including at Intel's behest) for documents originating from Mr. Rivers' employment at Intel.

24    Micron declines to repeat searches already conducted. Micron also objects to this request as

25    assuming facts not in evidence, because (so far as Micron is aware), there are no allegations, and

26    no evidence, in the underlying litigation, that Mr. Rivers shared, uploaded, emailed, or otherwise

27    transferred any Intel document originating from his employment at Intel to Micron computer

28    systems when he was employed by Micron. Micron further objects to this request as overly broad,

1   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

2   Notwithstanding these objections, and pursuant to Intel's new request, Micron undertook a

3   reasonably diligent search of the phone that it had issued to Mr. Rivers during his employment at

4   Micron, and did not find documents originating from Mr. Rivers' employment at Intel.

5       Subject to these objections, and based on a reasonably diligent search effort, Micron

6   responds that no such documents exist.

7               **Micron's Supplemental Response to Document Request No. 10**

8       (Same as Micron's Supplemental Response to Document Request No. 3)

9       **B.   Intel's Argument Regarding Document Requests Nos. 1-4 and 10**

10      These requests seek clearly discoverable information about whether or not Intel's

11  confidential or trade secret information and documents were transferred from Rivers to Micron.  In

12  its supplemental responses received a few days ago, Micron stated that it searched for responsive

13  documents on Rivers' email, his hard drive, and his phone, and found none.  Micron, however,

14  refuses to search for responsive documents on the servers and shared drives to which Rivers had

15  access at Micron, and it refuses to search other custodians with whom Rivers may have shared

16  Intel confidential information.  When Micron initially objected to these requests based on burden,

17  as a show of good faith, Intel provided search terms and possible custodians.  *See* Luedtke Decl.

18  Ex. I.  However, Micron refuses to conduct these searches.

19      Micron's sole objection to these additional searches is undue burden.  Intel's counsel asked

20  in its June 17 meet and confer call and again in its July 19 meet and confer letter for an

21  explanation of why the requests were burdensome, and received none.  Luedtke Decl. ¶¶ 17-19, 25

22  & Ex. M.  In its supplemental responses to all of its requests for production, in meet and confer,

23  and in this Joint Statement, Micron has failed to set forth *any specific evidence* demonstrating that

24  Intel's requests would subject Micron to any *undue* burden in light of their "relevance, the need of

25  the party for the documents, the breadth of the document request, the time period covered by it, the

26  particularity with which the documents are described and the burden imposed."  *Moon v. SCP*

27  *Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (quoting *Travelers Indem. Co. v. Metro. Life*

28  *Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005)).  As the party asserting the objection, Micron must

1   demonstrate the existence of an undue burden.  In *Big Baboon Corp. v. Dell, Inc.*, 723 F. Supp. 2d

2   1224 (C.D. Cal. 2010), the Court held: "It is well-established that the burden is on the objecting

3   party to show grounds for failing to provide the requested discovery."  *Id.* at 1229.  The court

4   explained that the party objecting to discovery "cannot simply invoke generalized objections," but

5   instead must be based on evidence submitted through affidavits or other supporting

6   evidence.  *Id.*  In *Thomas v. Cate*, this Court evaluated detailed declarations for a particular

7   interrogatory and ultimately concluded that the fact that it would take 111 hours to review the data

8   required to respond did not render the discovery request unduly burdensome, emphasizing that the

9   test is whether the burden is "undue" given the relevance of the evidence.  715 F. Supp. 2d 1012,

10  1033-34 (E.D. Cal. 2010).  For a different request for production, where the objecting party

11  offered no evidence in support of its burden argument, the Court categorically dismissed the

12  objection as insufficient.  *Id.* at 1042.  *See also Ficep Corp. v. Haas Metal Eng'g, Inc.*, 2015 WL

13  566988, at *3 (D. Kan. 2015) ("Typically, a movant asserting an undue burden objection must

14  present an affidavit or other evidentiary proof of the time or expense involved in responding to the

15  discovery request.").

16          Here, the Court has nothing to weigh or consider in evaluating whether any burden is

17  undue.  Micron utterly fails to offer the required evidence.  It offers no evidence to answer

18  important questions such as the following:  What steps would be required for Micron to collect

19  from additional custodians for the relatively narrow time period at issue?  What would be the cost

20  and time required per custodian?  Once that is done, how many documents hit on the proposed

21  search terms offered by Intel?  How long would it take to review those hits and at what

22  cost?  Understanding that the shared drives to which Rivers had access are large, what would be

23  the steps required to run Intel's narrow proposed searches across those drives?  How much time

24  and at what cost for those shared drive searches?  What would be the time and cost?  Intel has

25  absolutely no information on these questions despite pursuing them in meet and confer for

26  months.  It defies belief to suggest these narrowly tailored document requests on highly relevant

27  subject matters would constitute an undue burden on Micron.

28          Micron argues that its searches of Rivers' email and laptop are sufficient since Micron

1   claims it did not find any evidence of Intel confidential documents.  The problem with this

2   argument is that Rivers has repeatedly engaged in evidence destruction.  Rivers admits that he

3   deleted the USB drive on which he misappropriated documents after receiving a letter from Intel

4   on October 2 instructing him not to alter any evidence on the device.  *See* Luedtke Decl. Ex. D at

5   Response to Interrogatory No. 8.  When Judge England confronted Rivers' counsel about the

6   deletion of the USB Drive after Intel requested its return and expressed his concern about Rivers

7   conduct, Rivers' counsel had no explanation for the undisputed conduct.  Luedtke Decl. Ex. B (PI

8   Hearing Tr. at 18:2-7).  Further, after receiving that October 2 letter, and again after the Court

9   ordered him to turn over his home computer for inspection in this litigation, he ran anti-forensic

10  software on the computer and engaged in mass file deletion.  Luedtke Decl. Ex. D at Response to

11  Interrogatory No. 18; *id.* Ex. C (Stroz Report at 9, 11).  Because his repeated destruction of

12  evidence may have extended to his Micron computer and emails, it is entirely reasonable and

13  appropriate to take discovery from custodians such as his managers and colleagues with whom he

14  may have communicated the confidential information, and from Micron shared servers on which

15  he may have stored misappropriated Intel information.

16      **C.**     **Micron's Argument Regarding Document Requests Nos. 1-4 and 10**

17          As discussed above, Micron has already gone well above the norm to conduct intensive

18  searches, unilaterally and also in cooperation with Intel, and found no sign that Mr. Rivers

19  uploaded or conveyed any files from his employment at Intel.  Intel should be pleased with this

20  cooperation.  Instead, it demands that Micron conduct yet more searches that are entirely

21  unreasonable and pointless on their face. "[A] party serving a subpoena 'must take reasonable

22  steps to avoid imposing undue burden or expense on a person subject to the

23  subpoena.' Fed. R. Civ. P. 45(d)(1). In addition, a nonparty subject to a subpoena duces tecum

24  "deserve[s] extra protection from the courts." *Edwards v. City of Vallejo*, 2019 WL 3564168, at *5

25  (E.D. Cal. Aug. 6, 2019) (Claire, M.J.) (citing *High Tech Medical Instrumentation v. New Image*

26  *Indus.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995)).  Indeed, "[u]nderlying the protections of Rule 45 is

27  the recognition that "the word 'non-party' serves as a constant reminder of the reasons for the

28  limitations that characterize 'third-party' discovery." *Gonzales v. Google, Inc.*, 234 F.R.D. 674,

1    680 (N.D. Cal. 2006) (citing *Dart Indus. Co. v. Westwood Chem. Co.,* 649 F.2d 646, 649 (9th

2    Cir.1980)).  This court has recognized the limits of non-party discovery under Rule 45.

3        In addition to the special duty imposed on the requesting party under Rule 45, discovery

4    may be obtained only if it is relevant to any party's claim or defense and proportional to the needs

5    of the case. *See Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 503 (E.D. Cal.

6    2012). While relevancy is defined broadly it is not without "ultimate and necessary boundaries."

7    *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679–80 (N.D. Cal. 2006). Of course, "if the sought-

8    after documents are not relevant nor calculated to lead to the discovery of admissible evidence,

9    then any burden whatsoever imposed would be by definition 'undue.'" *Pac. Gas & Elec. Co. v.*

10   *Lynch*, 2002 WL 32812098, at *1 (N.D. Cal. Aug. 19, 2002) (citing *Compaq Computer Corp. v.*

11   *Packard Bell Elec, Inc.,* 163 F.R.D. 329, 335–36 (N.D.Cal.1995)).

12        Courts regularly limit unreasonable discovery requests.  *See, e.g. Moore v. Superway*

13   *Logistics, Inc.*, 2019 WL 2285392, at *5 (E.D. Cal. May 29, 2019) (denying motion to compel

14   discovery of third-party testimony that was "neither relevant nor proportional to the needs of the

15   case" because the testimony had "no tendency to prove or disprove any consequential fact");

16   *Wheeler v. Aliceson*, 2015 WL 3507369, at *9 (E.D. Cal. June 3, 2015) (rejecting motion to

17   compel because discovery does not provide a basis for a Plaintiff to "rifle through Defendants'

18   computers") (Claire, M.J.); *Straight Path IP Grp., Inc. v. Blackberry Ltd.*, No. C 14-80150 WHA,

19   2014 WL 3401723, at *1 (N.D. Cal. July 8, 2014) (quashing overbroad third party subpoena).

20        Here, after Micron's exceptionally intensive searches set forth above and in its responses,

21   what is left for Intel to demand?  For one, Intel demands that Micron conduct searches of at least

22   ten of Mr. Rivers' former Micron co-workers, in search of Intel documents it speculates Mr.

23   Rivers could have brought in to Micron (but were not detected by Micron's detailed review of Mr.

24   Rivers' activity), and emailed to Mr. Rivers' co-workers (but were not detected or caught by either

25   Micron's review of Mr. Rivers' activity *or* the review of Mr. Rivers' email activity by Micron's

26   counsel). This makes no sense: if Mr. Rivers' had transferred these files to his co-workers there

27   would be evidence of it in one of the many places Micron has already checked, reviewed, and

28   produced documents to Intel's counsel.  The absence of such evidence should not be justification

-20-

1  for Intel to demand more searches but rather should let Intel rest assured that none of these

2  documents have been brought into Micron.

3      Second, Intel demands that Micron run additional, broad searches across its servers, on top

4  of the searches already conducted, essentially just to be sure that there is nothing Rivers managed

5  to hide on the servers despite Micron's detailed investigation and monitoring.  But these searches

6  are both potentially impossible to run given the magnitude of Micron's system and even if

7  possible, they would require indexing and searching through potentially thousands of servers and

8  10's of petabytes of data.  Intel does not dispute this fact.  This would require months upon

9  months of time and hundreds of hours of review time.  Intel's speculation is too far-fetched to

10  justify the cost and burden, given all the searches already conducted.  This has to end, and Micron

11  has done more than enough to determine that Mr. Rivers did not upload or convey the files at issue

12  into Micron.  Intel's demands at this point are nothing more than an attempt to "rifle through

13  [Micron's] computers," *Wheeler,* 2015 WL 3507369, at *9, that is unlikely to generate any

14  relevant evidence.  *See generally Cox v. Roadrunner Intermodal Serv., LLC*, 2019 WL 2327712,

15  *4 (E.D. Cal. May 31, 2019) (denying motion to compel where requested discovery was unlikely

16  "to prove or disprove any consequential fact" remaining in the case).  And because Intel's ever-

17  increasing demands are not relevant nor calculated to lead to the discovery of admissible evidence,

18  they "by definition" impose an undue burden and should be denied.  *Pac. Gas & Elec. Co.,* 2002

19  WL 32812098, at *1.

20      **D.    Document Requests Nos. 5, 6 and 11**

21      Requests Nos. 5, 6 and 11 all relate to any communications with Rivers regarding his

22  alleged misappropriation of Intel trade secrets and confidential information.

23          **Document Request No. 5**

24      All Documents that refer to or constitute communications with or by Doyle Rivers about

25  the removable USB storage device that he used to download Documents from his Intel laptop in

26  September 2018, including but not limited to communications about the deletion of documents

27  from that device.

28

1 **Micron's Response to Document Request No. 5**

2    Micron objects to the response to the extent it calls for information protected by the

3 attorney-client privilege, work-product doctrine, or any other applicable privilege. Micron fm1her

4 objects to this request as overly broad, burdensome, and not reasonably calculated to lead to the

5 discovery of admissible evidence. Because this request squarely calls for the production of

6 documents subject to privilege and/or work product protection, Micron declines to respond on that

7 basis or to produce documents otherwise within the scope of the request.

8 **Micron's Supplemental Response to Document Request No. 5**

9    Micron restates and incorporates its original objections.

10    Micron objects to Intel's request to conduct these searches on all shared drives that Mr.

11 Rivers had access to and on 12 additional custodians. Micron declines to do so as the costs and

12 burden associated far outweigh any potential benefit. Because Micron has already performed

13 extensive analysis and review of Mr. Rivers' activity and shown that there is no evidence that Mr.

14 Rivers' introduced Intel Confidential files into the Micron environment, Intel's request to have

15 Micron search through additional custodian emails for potential communications where Micron

16 employees—communicating with each other, but *not* Mr. Rivers—is burdensome and not

17 reasonably calculated to lead to the discovery of admissible evidence.

18    Subject to the above, Micron states that it ran all of the search terms proposed by Intel on

19 Mr. Rivers' email, and ran similarly relevant search terms (accounting for various confidential

20 labels and text embedded in virtually all Micron and JDP documents that are used in the ordinary

21 course of business), on Mr. Rivers' Micron laptop and cell phone. Micron will produce any non-

22 privileged responsive documents.

23 **Document Request No. 6**

24    All Documents that refer to or constitute communications related to Doyle Rivers'

25 downloading, retention, taking, use, or dissemination of confidential or trade secret Intel

26 Documents or information.

27 **Micron's Response to Document Request No. 6**

28    Micron objects to the response to the extent it calls for information protected by the

attorney-client privilege, work-product doctrine, or any other applicable privilege.

Micron objects to this request as unduly burdensome because, as Micron detailed in its December 27, 2018 opposition to Intel's request to serve expedited discovery (ECF 14) and the associated Declaration of J .R. Tietsort, Micron has previously conducted a number of searches (including at Intel's behest) for such documents. Micron declines to repeat searches already conducted. Micron also objects to this request as assuming facts not in evidence, because (so far as Micron is aware), there are no allegations, and no evidence, in the underlying litigation, that Mr. Rivers shared, uploaded, emailed, or otherwise transferred any Intel document originating from his employment at Intel to Micron computer systems when he was employed by Micron. Micron further objects to this request as overly broad, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding these objections, and pursuant to Intel's new request, Micron undertook a reasonably diligent search of the phone that it had issued to Mr. Rivers during his employment at Micron.

Subject to these objections, and to the extent this Request overlaps with Requests 1-3, and based on a reasonably diligent search effort, Micron responds that no such documents exist. To the extent Intel seeks communications (if any exist) regarding Intel's allegations against Mr. Rivers in general, Micron objects to the request to the extent it would call for the production of documents that are protected by attorney-client privilege and/or the work product doctrine. Micron declines to respond on that basis or to produce documents otherwise within the scope of the request.

**Micron's Supplemental Response to Document Request No. 6**

(Same as Micron's Supplemental Response to Document Request No. 5)

**Document Request No. 11**

All Documents that refer to or reflect communications with or about Doyle Rivers and the allegations in Intel's Complaint in this matter, Attachment 2.

**Micron's Response to Document Request No. 11**

Micron objects to the response to the extent it calls for information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege. Indeed, this request squarely calls for the production of documents protected by the attorney-client privilege

1   and/or the work product doctrine, and therefore declines to respond on that basis or to produce

2   otherwise responsive documents. Micron further objects to this request as overly broad,

3   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

4   Because this request squarely calls for the production of documents subject to privilege and/or

5   work product protection, Micron declines to respond on that basis or to produce documents

6   otherwise within the scope of the request.

7                          **Micron's Supplemental Response to Document Request No. 11**

8                              (Same as Micron's Supplemental Response to Document Request No. 5)

9          **E.      Intel's Arguments Regarding Document Requests Nos. 5, 6 and 11**

10         Micron's response to these requests objects to these requests on privilege grounds (along

11   with the aforementioned boilerplate regarding alleged undue burden that are flawed objections for

12   the reasons set forth above).  Intel disagrees that its requests are aimed at the discovery of

13   privileged information, but in any event, the proper response to a discovery request that

14   encompasses privileged information is to provide a privilege log, not to unilaterally decline to

15   respond. Fed. R. Civ. P. 45(d)(2); *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir.

16   2010) (explaining that not all communications between attorney and client are privileged and that

17   an attorney must do more than "mak[e] a blanket claim").

18         Nor should Micron be able to limit its search to just Rivers' own email and laptop.  As set

19   forth in Section I(A)(1)(c)-(d) *supra*, Rivers has demonstrated a willingness to destroy evidence as

20   demonstrated by his wiping of the USB Device he used to misappropriate Intel files, his use of a

21   host of anti-forensic programs on his home computer, and his mass file deletion.  Luedtke Decl.

22   Ex. C at 9, 11 & Ex. B (PI Hearing Tr. at 18:2-7).  It is reasonable to assume he did the same on

23   his Micron devices.  Any diligent search for responsive documents by Micron must therefore

24   include those individuals it reasonably believes communicated with Rivers about these topics and

25   other places Rivers may have stored information, such as shared network drives.  In its June 18

26   correspondence, Intel suggested 11 specific custodians (as well as Rivers' manager(s), whose

27   identities Intel does not know) who are likely sources of discoverable information and search

28   terms to use.  *Id*. Ex. I.  Intel based these custodians on the names Rivers identified in

1   interrogatory responses that he solicited to join Micron.  *See Id*. Ex. D at Supplemental Response

2   to Interrogatory No. 12.  Micron has refused to conduct searches as to these custodians.

3          As to specific requests:

4          **Request No. 5** seeks communications with or by Rivers about the USB drive that he used

5   to download Intel documents.  On October 2, Intel directed Rivers to give this drive back to Intel.

6   Instead, Rivers provided it *to Micron*.  Luedtke Decl. ¶ 3. The very provision of this drive to

7   Micron breached Rivers' confidentiality agreement with Intel.  The drive was deleted despite

8   Intel's explicit instruction not to alter anything on the drive.  Luedtke Decl. ¶ 7.  Furthermore,

9   Micron (not Rivers) responded to Intel's letter asking for the drive back and thereby inserted itself

10  into this matter.  Luedtke Decl. ¶ 3.  As a result, it is proper for Intel to ask about Rivers'

11  communications with Micron about that drive.  And, it is reasonable for Micron to identify the

12  persons with whom Rivers communicated (known only to Micron) about the drive and search their

13  communications.  Micron offers no evidence why identifying those persons or searching their

14  documents is unduly burdensome.

15         **Request No. 6** seeks communications regarding Rivers' misappropriation of confidential

16  information or trade secrets.  Responsive documents could be highly relevant, and Micron does

17  not appear to dispute this.  For example, if Rivers talked to his manager about confidential Intel

18  information, this would be a highly relevant document.  Or, if Rivers' colleagues talked about how

19  helpful the confidential pricing information that Rivers told them was in Micron setting its own

20  pricing, this would also be highly relevant to this litigation.  Micron cannot rely exclusively on

21  searching Rivers' documents given Rivers' history of deleting evidence, and Micron offered no

22  evidence to justify an undue burden objection.

23         **Request No. 11** likewise seeks documents that refer to or reflect communications with or

24  about Rivers and the allegations in the complaint.  For example, communications between Rivers'

25  manager and Rivers about discipline resulting from facts related to Intel's complaint is highly

26  relevant to this litigation as it shows that Micron found evidence corroborating Intel's allegations.

27         Micron asserts an undue burden objection as to this request.  Again, Micron has not,

28  however, articulated why it would be unduly burdensome to search the 11 suggested custodians

1   and Rivers' manager(s) with the specific search terms that Intel provided more than two months

2   ago.  Luedtke Decl. Ex. I.

3       **F.      Micron's Arguments Regarding Document Requests Nos. 5, 6 and 11**

4       The parties' dispute here is simple.  Intel has served overbroad requests, seeking all

5   documents that "refer to or constitute communications" generally about the allegations in the

6   Complaint.  Micron agreed to, and did diligently search Mr. Rivers' email, hard drive, and phone

7   and produced all responsive, non-privileged documents to Intel.  Intel, however, demands that

8   Micron should also search through Mr. Rivers' co-workers and managers' email, as well as any

9   cloud-based servers or drives that Mr. Rivers potentially had access to for additional documents.

10      This is too remote and speculative to justify the cost and burden on Micron. *See Micron's*

11  *argument, supra section C.*  Micron has already produced or logged any responsive documents or

12  emails in which Mr. Rivers was involved in the conversation.  The only potential items these

13  searches could generate is chatter between two Micron employees talking *about* Rivers and the

14  allegations in the complaint.  But this stray email chatter (if it even exists) is not relevant to Intel's

15  claims.

16      Intel will likely claim that Micron is a big company and this is a small burden for Micron

17  to bear.  But Intel's demands would essentially require that an attorney review large swathes of

18  emails between Micron employees in the hopes of finding a needle in a haystack.  And even if

19  Micron should come across such an email it will be of limited relevance, if any.  Mr. Rivers has

20  already entered into a permanent injunction—of what relevance is it to Intel's claims whether or

21  not two of Rivers' employees might have discussed the fact that Mr. Rivers was sued by Intel?

22      Intel's demands at this point are nothing more than an attempt to "rifle through [Micron's]

23  computers," *Wheeler,* 2015 WL 3507369, at *9, that is unlikely to generate any relevant evidence.

24  *See generally Cox*, 2019 WL 2327712 at *4 (denying motion to compel where requested discovery

25  was unlikely "to prove or disprove any consequential fact" remaining in the case).  And because

26  Intel's ever-increasing demands are not relevant nor calculated to lead to the discovery of

27  admissible evidence, they "by definition" impose an undue burden and should be denied.  *Pac.*

28  *Gas & Elec. Co.,* 2002 WL 32812098, at *1.

**G.**     __Document Request No. 7__

**Document Request No. 7**

All Documents in Micron's possession, custody, or control that match, or are similar to, the hash values of the Documents listed in Attachment 1[1].

**Micron's Response to Document Request No. 7**

Micron objects to the response to the extent it calls for information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege.

Micron objects to this request as unduly burdensome because, as Micron detailed in its December 27, 2018 opposition to Intel's request to serve expedited discovery (ECF 14) and the associated Declaration of J.R. Tietsort, Micron has previously conducted a number of searches (including at Intel's behest) for such documents. Micron further objects as Attachment 1 is not a complete document in the form it was served, as certain information and data appears to be unreadable. Based on a reasonably diligent search, Micron believes that Attachment 1 contains the same list of files that Micron previously searched for and detailed in its December 27, 2018. Micron declines to repeat searches already conducted. Micron also objects to this request as assuming facts not in evidence, because (so far as Micron is aware), there are no allegations, and no evidence, in the underlying litigation that Mr. Rivers shared, uploaded, emailed, or otherwise transferred any Intel document originating from his employment at Intel to Micron computer systems when he was employed by Micron. .

In addition, Micron objects to Intel's request that searches be repeated based on "fuzzy hash" conditions as described by Intel. First, Intel did not make that request when it previously

---

[1] [***Intel Footnote to Request 7***] Due to the number of Microsoft office files (Word, Excel, PowerPoint) listed in Attachment 1 that potentially could have been renamed and/or edited, thus changing the hash value, we request that Micron conduct fuzzy hash searches based on the hash values listed. Fuzzy hashing is a methodology for identifying known files that have had data inserted, modified, deleted or otherwise been altered preventing exact MD5 hash value matching. A fuzzy hash search attempts to find homologous files, or files that are similar but not exactly the same.  Homologous files have identical strings of binary data and must be hashed traditionally in segments to identify matching strings.  We request that Micron employ the "SSDeep" fuzzy hashing tool or another command-line tool that provides a similarity score for searched documents against the known data population.

asked Micron to conduct searches on the same hash files, and it would be unduly burdensome to repeat a search based on a condition that Intel did not think sufficiently important to include the first time around. Second, so far as Micron is aware, there is no allegation or evidence that Mr. Rivers re-named/edited any file originating from his employment at Intel, and thus the foundation for the request is unduly speculative, thus confirming the undue burden posed by the request. Notwithstanding these objections, and pursuant to Intel's new request, Micron undertook a reasonably diligent search of the phone that it had issued to Mr. Rivers during his employment at Micron, and did not find documents originating from Mr. Rivers' employment at Intel.

Subject to these objections, and based on a reasonably diligent search effort, Micron responds that no such documents exist.

### Micron's Supplemental Response to Document Request No. 7

Micron reincorporates its objections above. Subject to the above, Micron will agree to perform the fuzzy hash search and provide further responses, as needed, once complete.

### H. Intel's Arguments Regarding Document Request No. 7

In Micron's Supplemental Response—three business days before this Statement was due—Micron agreed to perform the requested fuzzy hash search  Thus, the propriety of Intel's request is no longer at issue.  However, Micron has dragged its feet for months responding to this subpoena, including letting more than a month pass to respond to repeated meet and confer efforts.  Luedtke Decl. ¶¶ 20-21, 27-29, & Ex. N.  Micron has given no indication of when it will produce the agreed upon response to Request No. 7.  Accordingly, in light of Micron's significant delay in agreeing to produce responsive documents and the narrow window of fact discovery remaining, Intel respectfully requests the Court issue an order requiring Micron to complete the fuzzy hash search and produce responsive documents within 14 business days.

### I. Micron's Arguments Regarding Document Requests No. 7

Intel also demands that Micron complete a so-call "fuzzy hash search" against files Intel has identified.  This is an unusual search methodology, and not the norm in civil discovery.  This search arises from the remote theory that Mr. Rivers surreptitiously edited and revised portions of the files he allegedly took from Intel prior to his departure and uploaded them to his Micron laptop

1   (but was not captured by any of the other searches and monitoring Micron has conducted).

2   Micron has agreed to perform this search despite the fact that it is functionally duplicative of prior

3   searches conducted by Micron and despite the fact that it is non-standard and costly.  Notably,

4   Intel made no mention of this request in late 2018, when Intel's security team asked Micron to

5   perform certain searches – demonstrating that this is, at best, a peripheral request so unimportant

6   that Intel did not ask the first time around.  Micron has worked diligently on this request but it is

7   reasonably complicated and time-consuming.  Intel seeks to impose a Court-ordered deadline by

8   which Micron must complete the "fuzzy hash" searches – 14 days – but at this time, Micron

9   believes that such a date is arbitrary and unnecessary.  Micron will report the results of its "fuzzy

10  hash" searches when it is reasonably able to do so, and does not anticipate that will take much

11  longer.

12       **J.       Document Request No. 9**

13               **Document Request No. 9**

14       All Documents that refer to or reflect any effort by Doyle Rivers to solicit or recruit Intel

15  employees to work at Micron. This request includes but is not limited to documents referring to or

16  reflecting his contacts with the following: Manjinder Bains; Scott Boese; Wilson Fang; Nevil

17  Gajera; Rucha Geedh; Josephine Hamada; Lingming Yang; Megh Mehta; Kristina Ming; Neeraj

18  Shanna; Doug Trujillo; Bryan Woolstenhulme; Yen Chun Lee; Reneta Jenik; Jeffrey Schlichting;

19  and Jessica Chen. (Note that this request should encompass text messages on his Micron cell

20  phone that he returned to Micron upon the end of his employment on February 20, 2019. Mr.

21  Rivers has identified in verified interrogatory responses that he has communications with Intel

22  employees about employment at Micron that occurred via text from his Micron cell phone which

23  he said is no longer in his possession.)

24               **Micron's Response to Document Request No. 9**

25       Micron objects to the response to the extent it calls for information protected by the

26  attorney-client privilege, work-product doctrine, or any other applicable privilege.

27       Micron objects to this request as overly broad, burdensome, and not reasonably calculated

28  to lead to the discovery of admissible evidence. Micron further objects to this request in its

1   entirely because it is entirely predicated on an illegal contract clause that constitutes a restraint on

2   trade under California Business & Professions Code section 16600. Intel does not have a right to

3   seek discovery in pursuit of a contract clause that is void as a matter of law. See *AMN Healthcare*

4   *v. Aya Healthcare*, 28 Cal. App. 5th 923 (2018); *Barker v. Insight Global*, 2019 U.S. Dist. LEXIS

5   6523 (N .D. Cal. Jan. 11, 2019); *WeRide Corp. v. Huang*, 379 F. Supp. 3d 834 (N.D. Cal. 2019).

6                    **Micron's Supplemental Response to Document Request No. 9**

7           After reviewing Intel's First Amended Complaint, Micron re-iterates its prior objections.

8   Intel does not have a right to seek discovery of a contract clause that is void as a matter of law, and

9   reconstituting such a claim under the guise of trade secret law is improper.

10          **K.      Intel's Arguments Regarding Document Request No. 9**

11          This request asks for documents related to Rivers' solicitation of Intel employees to work

12  at Micron.  Rivers has informed Intel that he did engage in that solicitation and some of it was

13  done using his Micron phone, which is now in Micron's possession. Rivers said he produced the

14  communications in his possession but could not produce his communications from his Micron

15  phone.  Micron refused to produce these documents.

16          Micron first claims such documents are privileged.  It is difficult to see how documents

17  that "refer to or reflect" Rivers' recruitment of Intel employees are privileged, but if Micron

18  believes they are, it should place them on a privilege log.

19          Micron next claims this request is "overly broad" and unduly burdensome.  These

20  objections are without merit.  The request is quite specific that the communications need to "refer

21  to or reflect" Rivers' recruitment of Intel employees.  Rivers was only at Micron for a short period

22  of time.  To aid Micron's search, Intel provided names of 11 people it believes he recruited,

23  though there may be more that need to be identified.  Luedtke Decl. Ex. I.  Micron has not

24  articulated why the request created undue burden.

25          Next, the information sought is certainly within the proper scope of discovery.  Again,

26  Rivers has admitted in his interrogatories that he downloaded highly sensitive personnel

27  compilations that contained salary and bonus information and performance reviews for Intel

28  employees that Intel believes he then recruited to work at Micron.  *See* Luedtke Decl. Ex. D at

1   Supplemental Response to Interrogatory No. 2.  Taking and using confidential and trade secret

2   Intel personnel information is a violation of Rivers' confidentiality agreement with Intel, as well

3   as of the federal Defend Trade Secrets Act.  Indeed, at the preliminary injunction hearing, Judge

4   England expressed serious concern about Rivers' actions.  He said the conduct of downloading the

5   personnel information looked "terrible" and made Judge England describe Rivers as being "in a

6   world of hurt" even without discovery in this case.  Luedtke Decl. Ex. B at 14:6, 17:20-22.

7        Finally, Micron claims that this request is barred because it involves an employee non-

8   solicitation agreement that is "void as a matter of law" and an "illegal contract."  This argument is

9   contrary to Judge England's finding at the preliminary injunction hearing and his decision denying

10  Rivers' motion to dismiss based on the same argument.  *See* Luedtke Decl. Ex. B (hearing

11  transcript at 23-26); Docket No. 61.  To be clear, Intel does not assert a claim against Rivers for

12  breach of a non-solicitation agreement, but instead for the *misappropriation and use of trade*

13  *secrets* and for breach of his confidentiality agreement.  The California Court of Appeal's decision

14  in *AMN Healthcare v. Aya Healthcare*, 28 Cal. App. 5th 923 (2018), on which Micron relies, has

15  no application where, as here, an employee uses confidential or trade secret information as part of

16  the solicitation.  *See, e.g.*, *ReadyLink Healthcare v. Cotton*, 126 Cal. App. 4th 1006, 1020 (2005)

17  (finding a compilation of employee information constituted a trade secret where it contained both

18  employee identities and "other proprietary and confidential information" that the employer had put

19  together through "substantial time, effort, and expense").  In any case, the *AMN* decision, which

20  was decided under California state law, does not implicate the DTSA or Intel's claim for breach of

21  Rivers' confidentiality agreement, which is plainly enforceable.  *See Allied N. Am. Ins. Brokerage*

22  *Corp. of Cal. v. Woodruff-Sawyer*, No. C 04-2527 MJJ, 2005 WL 6583937, at *8 (N.D. Cal. Feb.

23  22, 2005) (holding non-solicitation and nondisclosure agreements may be enforced "without

24  requiring proof that such information constitutes a trade secret"); *Latona v. Aetna U.S. Healthcare,*

25  *Inc.*, 82 F. Supp. 2d 1089, 1096 (C.D. Cal. 1999) (finding contracts "that serve to protect a former

26  employer's trade secrets, proprietary information, and confidential information are valid in

27  California.").

28        Importantly, Rivers raised the same arguments about the alleged unenforceability of a trade

secret or confidentiality claim related to taking and using confidential employee information in his

motion to dismiss, which this Court summarily rejected.  ECF No. 61.  Judge England found that

the claims had sufficient legal basis to proceed.

**L.      Micron's Arguments Regarding Document Request No. 9**

When Intel first served Request No. 9, it was at that time alleging an unlawful trade

restraint against Mr. Rivers – a claim that he violated a co-worker non-solicit covenant.  Intel then

dropped that claim, in recognition that such covenants are illegal in California.  *See AMN*

*Healthcare v. Aya Healthcare*, 28 Cal. App. 5th 923 (2018); *Barker v. Insight Global,* 2019 U.S.

Dist. LEXIS 6523 (N.D. Cal. Jan. 11, 2019); *WeRide Corp. v. Huang*, 2019 WL 143934 (N.D.

Cal. April 1, 2019).

Because Request No. 9 is expressly based on efforts "to solicit or recruit Intel employees

to work at Micron," it is prima facie unlawful, because California law allows former employees to

"solicit or recruit" former co-workers.   Indeed, California has a well-established "legislative

policy in favor of open competition and employee mobility." *Edwards v. Arthur Andersen*, 44 Cal.

4th 937, 946 (2008), and Request 9 blatantly encroaches on protected rights. We need go no

further, because the Request is facially improper on its face.

After dropping its non-solicit cause of action, however, Intel has endeavored to come up

with a new theory to delve into employee hiring at Micron – a theory that is not only legally

flawed, but that would be even more intrusive, and more out of line with California public policy,

than its now-abandoned non-solicit claim.  Specifically, Intel now claims that if a former

employee engages in communications with former co-workers about "salary, performance,

reporting structure, and other information about individual Intel employees", that violates the trade

secret laws because Intel claims to own intellectual property rights in the salaries, performance,

names of supervisors, and undefined  "other information"  about the skills and talents of its

workforce.   *See* Ex. I to Luedtke Declaration at 3-4 (June 18, 2019 letter from Luedtke to

Gressel).

This theory is directly at odds with protected rights under California law, giving employers

and employees rights to engage in hiring, to discuss their salaries, and to discuss their skills,

1  talents, and basic employment facts in job interviews and otherwise.  It renders Request No. 9

2  even more invalid than how it was drafted.  Micron therefore objects in full, because it has full

3  right (as does Intel) to recruit and consider talented employees based on their salary, skills, talents,

4  and basic employment facts.

5      The default rule in California is that companies can hire directly from competitors, unless

6  the act of hiring is accomplished via an independently unlawful act.  *See Reeves v. Hanlon*, 33 Cal.

7  4th 1140, 1150 (2004) (explaining legal standard).  In turn, the federal Defend Trade Secrets Act

8  does not preempt or supersede state law, and in fact bows to local state law on trade restraints.  *See*

9  18 U.S.C. §§ 1836(b)(3)(A)(i)(II) (limiting relief under this section so long as it does not

10  "otherwise conflict with an applicable State law prohibiting restraints on the practice of a lawful

11  profession, trade, or business."); 1838 (DTSA does not "preempt" or "displace" state law).

12      Thus, Intel's attempt to redraft Request No. 9 as a "trade secret" theory could work only if

13  Intel could be the "owner" of a "trade secret" in its employees' salaries, skills, experience, talents,

14  the identities of their supervisors, and the like.  *See* 18 U.S.C. § 1836(b)(1) (a party bringing a

15  trade secret claim must be the "owner" of the information at issue).  It does not work, and instead

16  impermissibly encroaches into Micron's protected rights, even if we assume for purposes of

17  discussion that Mr. Rivers spoke to a former Intel co-worker about any of these things.

18      First, as a matter of law, California employees have an absolute right to discuss their

19  salaries with others.  *See* California Labor Code section 1197.5(k)(1) ("an employer shall not

20  prohibit an employee from disclosing the employee's own wages, discussing the wages of others,

21  [or] inquiring about another employee's wages.").  Unsurprisingly, the DTSA does not list

22  "employee salaries" among the "trade secrets" it includes (*see* 18 U.S.C. § 1839(3)), because

23  salaries are not trade secrets, employers are not the "owner" of their employees' salaries, and

24  California law allows employees to discuss their salaries as they wish.  It exceeds credibility to

25  imagine that Intel has never discussed salaries with any candidate for employment there in its long

26  history.

27      Second, employee talents are not the employer's trade secret as a matter of law.  *See Metro*

28  *Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, 862, (1994) ("a stable of

1  trained and talented at-will employees does not constitute an employer's trade secret").  Every

2  California employee is free to discuss his or her talent level with anyone he or she wishes.  Third,

3  employee's general skills, experience, and knowledge are also not the employer's trade secret, as a

4  matter of law.  *E.g.*, *Retirement Grp. v. Galante*, 176 Cal. App. 4th 1226, 1237 (2009) ("a former

5  employee may use general knowledge, skill, and experience acquired in his or her former

6  employment in competition with a former employer.").

7        Intel's attempt to rewrite Request No. 9 directly encroaches on protected rights that Micron

8  and its workforce enjoy, that are immune from liability, and that Intel has no right to inquire into.

9  Micron's objections should be sustained.

10        Even if it were otherwise, Request No. 9 is also factually flawed, because Micron did not

11  hire the two Intel employees whom Mr. Rivers appears to have made the first contact with.  Intel

12  has identified 16 former Intel employees it claims Rivers' solicited. Yet Rivers' discovery

13  responses, which Intel relies upon, show unequivocally that Rivers only initiated contact with two

14  of those employees—a Mr. Boese and a Mr. Sharma.  *See* ECF 48-3 at 12-14.  But as can be

15  confirmed by looking at LinkedIn, both remain at Intel today – which means Micron did not hire

16  them. As a result, Intel cannot establish any damages for its claim.  As to the other individuals,

17  Mr. Rivers discovery responses show that each of those employees either were being

18  independently recruited by Micron, or affirmatively contacted Mr. Rivers and inquired about

19  working at Micron.  So there is no factual basis for Request No. 9 as well.

20        **M.**        **Document Request No. 12**

21                 **Document Request No. 12**

22        Documents that refer to or reflect communications regarding the reasons for the end of

23  Doyle Rivers' employment at Micron.

24               **Micron's Response to Document Request No. 12**

25        Micron objects to the response to the extent it calls for information protected by the

26  attorney-client privilege, work-product doctrine, or any other applicable privilege. Indeed, this

27  request squarely calls for the production of documents subject to privilege and/or work product

28  protection, and Micron therefore declines to respond on that basis or to produce otherwise

responsive documents. Micron further objects that this request is overly broad, burdensome, irrelevant to the claims asserted in the underlying lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Micron declines to respond on that basis or to produce documents otherwise within the scope of the request.

**Micron's Supplemental Response to Document Request No. 12**

Micron reiterates its prior objections. Intel has not articulated how this request is reasonably calculated to lead to the discovery of admissible evidence. Micron does not believe that it is.

### N.     Intel's Arguments Regarding Document Request No. 12

This information is squarely relevant:  Intel understands that Rivers was terminated by Micron in February 2019 shortly after the third party forensics vendor discovered that Rivers ran anti-forensics programs on his home computer and engaged in mass file deletion. Communications with Rivers and other employees at Micron about his actions (i.e., taking Intel information and destroying evidence in the wake of those actions) and their consequences, which Intel assumes included termination, are squarely relevant to this litigation.  During meet and confer, Intel informed Micron that if Micron would represent in writing that Rivers was terminated for actions *unrelated* to taking or using Intel information, Intel's allegations in this litigation, and/or his actions destroying evidence or providing false information, then Intel would drop this request.  Micron was unable to confirm that this was the case.  Luedtke Decl. Ex. M.  This failure to confirm suggests that Rivers' termination is related to the allegations or evidence destruction in this litigation.  Thus, the documents are relevant.

Micron also refuses to produce such documents on the grounds this request is "overly broad."  This is surprising, given that the communications about Rivers' termination presumably involved a limited number of people and Rivers' employment at Micron was for a relatively short period of time, so communications about his termination must have been over an even shorter period of time.  As with other requests, Micron fails to offer evidence showing to why the request was unduly burdensome or overly broad.

Further, Micron claims this request encompasses privileged documents.  Again, however,

1   if that is true, the proper response is to place those documents on a privilege log.

2   **O.      Micron's Arguments Regarding Document Request No. 12**

3   Finally, Intel requests documents regarding the reasons for the end of Rivers' employment

4   at Micron.  Despite Micron's requests for further explanation, Intel has not provided a plausible

5   basis for why these documents are likely to lead to the discovery of admissible evidence. And Intel

6   has not established any basis for what the relevance of this request is to proving the claims in their

7   case—that Rivers' took Intel confidential files.  Rivers has already entered into a stipulated

8   injunction with Intel, admitting that he downloaded and deleted files).  Either those files contain

9   trade secrets or they do not, but either way, that dispute has no connection to internal Micron

10  communications about Mr. Rivers' employment.  After all, Micron has never seen the files in

11  question.  As a result, seeking Micron's internal communications is not reasonably calculated to

12  lead to the discovery of admissible, let alone relevant evidence.  *See generally, Cox*, 2019 WL

13  2327712 at *4 (denying motion to compel where requested discovery was unlikely "to prove or

14  disprove any consequential fact" remaining in the case).

15

16  DATED:  September 4, 2019            MUNGER, TOLLES & OLSON LLP

17

18

19                                      By:      */s/ Jeremy K. Beecher*
                                              JEREMY K. BEECHER
20                                            Attorneys for Plaintiff Intel Corporation

21  DATED:  September 4, 2019            WILSON SONSINI GOODRICH & ROSATI, P.C.

22

23

24                                      By:      */s/ Amit Q. Gressel*
                                              AMIT Q. GRESSEL
25                                            (as authorized on 9/4/19)
                                              Attorneys for Non-Party Micron Technology, Inc.
26

27

28