UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTEL CORPORATION, | No. 2:18-cv-03061-MCE-AC |
| Plaintiff, | |
| v. | ORDER |
| DOYLE RIVERS, | |
| Defendant. | |

This matter is before the court on plaintiff's motion to compel responses to a Fed. R. Civ. P. 45 third-party subpoena. ECF No. 59. This discovery motion was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(1). Plaintiff, Intel Corporation ("Intel"), and non-party Micron Technology Inc. ("Micron") appeared at a hearing on September 11, 2019 at 10:00 a.m. ECF No. 71. For the reasons stated below, the court GRANTS plaintiff's motion in part and DENIES it in part.

**I.     Relevant Background**

Intel brought this lawsuit against defendant Doyle Rivers on November 27, 2018 seeking relief for breach of contract (non-solicitation agreement), breach of contract (confidentiality agreement), and violation of the Defend Trade Secrets Act, 18, U.S.C. § 1836 et. seq. ECF No. 1 at 1. The operative First Amended Complaint ("FAC"), which dropped the non-solicitation agreement claim, was filed on June 10, 2019. ECF No. 53.

1

The FAC alleges that Rivers is a computer hardware engineer who was involved in Intel's development of 3D XPoint, a new type of memory technology in which Intel invested over a billion dollars. ECF No. 53 at 2. The project was developed as a joint venture with Micron, but Micron and Intel are now ending their joint venture and building their own independent teams to compete in the 3D XPoint marketplace. Id. As an Intel employee, Rivers played a role in Intel's independent development of products utilizing the technology, resulting in the production of Intel proprietary systems. Id. Because of his role, Rivers had access to Intel's highly confidential, trade secret information that Intel did not share with the public or any other entity unless pursuant to a confidentiality agreement. Id.

In September of 2018, Rivers accepted an engineering position with Micron. Id. Intel alleges that as Rivers prepared to leave Intel for Micron, he "engaged in a covert and calculated effort to collect Intel's confidential, proprietary, and trade secret technical and personnel information." Id. The night before he left his employment with Intel, Rivers allegedly plugged a USB storage device into his Intel computer for more than an hour, from 10:40 p.m. until 11:40 p.m. Id. Intel is informed and believes that Rivers copied Intel personnel information and additional confidential Intel files onto the USB drive. Id.

Intel alleged that Rivers went to great lengths to hide his misconduct. Id. When Intel detected his downloading of files, it sent him a letter demanding that he not destroy any evidence and that he return the USB device immediately. Id. Rivers never responded to Intel, nor did he return the device. Id. Instead, he handed the USB device over to Micron. Id. When the USB device was turned over to a forensic investigator, Intel found out that the USB device had been wiped clean. Id. Soon after, Intel was informed that Rivers would no longer be represented by counsel for his new employer but rather by his own personal counsel. Id.

When Intel demanded an explanation from Rivers' counsel about the destruction of evidence on the USB device, Rivers' counsel confirmed that Rivers downloaded the compilation of personnel information and other documents from his Intel laptop to his USB device, uploaded some of that information to his home computer, and used his home computer to wipe the USB device. Id. Following a motion by Intel, Rivers stipulated to entry of a Temporary Restraining

Order which allowed inspection of his home computer by a third-party investigator. Id. at 4. The investigation showed that Rivers had employed a suite of anti-forensic applications on his home computer and USB device designed to permanently delete and encrypt data and to conceal internet activity, and that he conducted mass file deletion on his home computer hard drive, leading the forensic inspector unable to determine what files existed in those locations previously. Id. It additionally showed that Rivers had connected 14 removable storage devices to his home computer between the time he allegedly misappropriated Intel's trade secrets and confidential information and the time he turned over his home computer to the forensic inspector for examination. Id.

In sworn discovery responses, Rivers admitted to downloading "(1) confidential information regarding thousands of Intel employees, (2) salary and bonus information for 31 Intel Non-volatile Memory Solution Group employees – including employees Intel believes Rivers recruited to and hired at his new employer and (3) a highly sensitive, proprietary tool containing data pertaining to Intel SSD products that are still under development and have not yet been released – the same products Rivers was hired by Intel's competitor to develop." Id. Rivers further admitted in discovery responses that he personally recruited Intel personnel to join his team at Micron using Intel confidential and/or trade secret information. Id.

On April 12, 2019, Intel served a document subpoena ("the Subpoena") on Micron. See Luedtke Decl. Ex. E. On April 26, 2019, Micron responded to Intel's Subpoena. See Luedtke Decl. Ex. F. Micron asserts that "[w]hen Intel alerted Micron [to Rivers' alleged misconduct] in October 2018, Micron voluntarily conducted intensive searches to determine whether Mr. Rivers had uploaded or otherwise conveyed such files (putting aside whether they contain trade secrets or not) into Micron or its computer systems. When Intel later requested that Micron conduct additional searches using a list of hundreds of file titles that Intel provided, Micron agreed. Indeed, even after Micron searched email, computers, Mr. Rivers' company phone, and other sources (as set forth at length in its detailed subpoena responses, Ex. E to Luedtke Declaration (original responses to Intel subpoena) and Ex. O to Luedtke Declaration (supplemental responses to Intel's subpoena), and the declaration at ECF 14) and found nothing, this summer Intel

3

requested that Micron have a third party vendor perform "fuzzy hash" searches on the thesis (not based on any evidence) that Mr. Rivers perhaps changed some portion of files and then surreptitiously uploaded them. Although that fanciful theory is beyond the bounds of a third-party subpoena, Micron has agreed to do so, hiring a vendor at its own cost." ECF No. 69 at 8.

Micron argues that the "current dispute comes because even though there is no sign that Mr. Rivers uploaded a single one of the files at issue, Intel now says Micron must search the email records of at least ten of his former co-workers at Micron, and conduct even more searches in Micron's general servers that Mr. Rivers could have had theoretical access to," which Micron refuses to do. Id. Meet and confer efforts were largely unproductive, though on August 29, 2019, Micron did produce supplemental written discovery responses and two emails. Id. at 9. This did not resolve the dispute.

## II. Motion

Plaintiff asks the court to compel third-party Micron to respond to several document production requests ("RFPs"), grouped as follows: (1) documents or information that Rivers may have brought to Micron (RFPs 1-4, 10); (2) communications regarding Rivers' alleged misappropriation of Intel trade secrets and confidential information (RFPs 5, 6, 11); (3) "All Documents in Micron's possession, custody, or control that match, or are similar to, the hash values of the Documents listed in Attachment 1" (RFP 7); (4) documents referring to or reflecting effort by Doyle Rivers to solicit or recruit Intel employees to work at Micron (RFP 9); and (5) documents referring or reflecting communications regarding the reasons for Rivers' departure from Micron (RFP 12). ECF No. 69. The parties adequately met and conferred before bringing this motion. Id. at 9-10.

The requests for production at issue include, in the order in which they are addressed in the briefing, the following:

Document Request No. 1

> All non-public Intel Documents in Micron's possession, custody, or control that were provided to or obtained by Micron, directly or indirectly, from Defendant Doyle Rivers from August 1, 2018 through the present. For clarity, this includes any non-public Intel

4

Document that Rivers uploaded to any Micron computer, server, or network or emailed to any Micron employee.

Document Request No. 2

All non-public Intel Documents in Micron's possession, custody, or control that relate to or concern any of the following categories of Intel information identified by Doyle Rivers on his Intel Trade Secret Acknowledgement Form on September 10, 2018 as categories of confidential and trade secret information to which he had access at Intel:

Intel's financial and pricing information for Intel" s Optane™ product;

Intel's customer specific pricing strategies for Optane™;

Intel's business and new product plans, objectives, and strategies for Optane™,

Intel's customer and vendor lists. contacts, habits, and plans for Optane™, including customers targets and vendors;

Intel's marketing information concerning Optane™ and strategy reviews from an engineering perspective;

Intel's Documents concerning yields, designs, efficiencies, and capabilities of production methods, facilities and systems for 3D XPoint and Optane™ (solid state drive solutions);

Intel's patent applications related to 3D XPoint and Optane™;

Intel's product designs and specifications, such as Test Tapes, Schematics, Database Tapes, or other, for the following Intel products: Optane™ (solid state drives), 3D XPoint component test tapes and schematics; and

Business group information for Intel, including personnel lists, organizational structure, identities, skills, experience, WWIDs, compensation and location of Intel personnel.

Document Request No. 3

A spreadsheet entitled "OrgTreeFlat_ List.xlsx" (a list of more than 3,000 Intel employee names) that would have been uploaded by or transmitted by Doyle Rivers on or after September 9, 2018 and all Documents containing variations, revisions, portions, and excerpts of the spreadsheet or reflecting any information derived from the spreadsheet.

Document Request No. 4

All Documents created after August 1, 2018 that constitute or refer to communications with or by Doyle Rivers about non-public Intel information or Documents that relate to or concern any of the

following categories of Intel information identified by Doyle Rivers on his Intel Trade Secret Acknowledgement Form on September 10, 2018 as categories of confidential and trade secret information to which he had access at Intel:

Intel's financial and pricing information for Intel's Optane™ product;

Intel's customer specific pricing strategies for Optane™;

Intel's business and new product plans, objectives, and strategies for Optane™;

Intel's customer and vendor lists, contacts, habits, and plans for Optane™, including customers targets and vendors;

Intel's marketing information concerning Optane™ and strategy reviews from an engineering perspective;

Intel's Documents concerning yields, designs, efficiencies, and capabilities of production methods, facilities and systems for 3D XPoint and Optane™ (solid state drive solutions);

Intel's patent applications related to 3D XPoint and Optane™;

Intel's product designs and specifications, such as Test Tapes, Schematics, Database Tapes, or other, for the following Intel products: Optane™, (solid state drives), 3D XPoint component test tapes and schematics; and

Business group information for Intel, including personnel lists, organizational structure, identities, skills, experience, WWIDs, compensation and location of Intel personnel

Document Request No. 10:

All Documents reflecting or referencing the following files: "Focal_DSHB_Detaill.xlsx," containing personnel information regarding Intel employees; "dpm_calc_sheet," a tool for calculating system fail rates and containing information about Intel SSD products; and "ECC_Calc.xlsm" and "ECC_Calc.xlsx," a tool used for calculating bit error rates.

Document Request No. 5

All Documents that refer to or constitute communications with or by Doyle Rivers about the removable USB storage device that he used to download Documents from his Intel laptop in September 2018, including but not limited to communications about the deletion of documents from that device.

Document Request No. 6

All Documents that refer to or constitute communications related to Doyle Rivers' downloading, retention, taking, use, or dissemination

of confidential or trade secret Intel Documents or information.

Document Request No. 11

> All Documents that refer to or reflect communications with or about Doyle Rivers and the allegations in Intel's Complaint in this matter, Attachment 2.

Document Request No. 7

> All Documents in Micron's possession, custody, or control that match, or are similar to, the hash values of the Documents listed in Attachment 1.

Document Request No. 9

> All Documents that refer to or reflect any effort by Doyle Rivers to solicit or recruit Intel employees to work at Micron. This request includes but is not limited to documents referring to or reflecting his contacts with the following: Manjinder Bains; Scott Boese; Wilson Fang; Nevil Gajera; Rucha Geedh; Josephine Hamada; Lingming Yang; Megh Mehta; Kristina Ming; Neeraj Shanna; Doug Trujillo; Bryan Woolstenhulme; Yen Chun Lee; Reneta Jenik; Jeffrey Schlichting; and Jessica Chen. (Note that this request should encompass text messages on his Micron cell phone that he returned to Micron upon the end of his employment on February 20, 2019. Mr. Rivers has identified in verified interrogatory responses that he has communications with Intel employees about employment at Micron that occurred via text from his Micron cell phone which he said is no longer in his possession.)

Document Request No. 12

> Documents that refer to or reflect communications regarding the reasons for the end of Doyle Rivers' employment at Micron.

### III. Analysis

A. <u>Legal Standard</u>

Federal Rule of Civil Procedure 45 allows a party to a lawsuit to serve a subpoena that commands a non-party to "produce documents, electronically stored information, or tangible things ..." Fed. R. Civ. P. 45(a)(1)(C). A court must modify or quash such a subpoena that fails to allow a reasonable time to comply, requires a person to travel more than 100 miles (except for trial within the state), requires disclosure of privileged or other protected materials, or subjects a person to undue burden. See Fed. R. Civ. P. 45(d)(3)(A) (i-iv). Rule 45 further provides that a court may modify or quash a subpoena when the subpoena requires the disclosure of a "trade

////

secret or other confidential research, development, or commercial information." See Fed. R. Civ. P. 45(d)(3)(B).

The Federal Rules limit the scope of subpoenas by the relevance standards set forth in Federal Rule of Civil Procedure 26(b)(1) ("[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"), and the considerations of burden and expense set forth in Federal Rules of Civil Procedure 26(b)(2) and 45(c)(1). "In evaluating whether a subpoena is unduly burdensome, the court balances the burden imposed on the party subject to the subpoena by the discovery request, the relevance of the information sought to the claims or defenses at issue, the breadth of the discovery request, and the litigant's need for the information." Wahoo Int'l, Inc. v. Phix Doctor, Inc., No. 13CV1395-GPC BLM, 2014 WL 3573400, at *2 (S.D. Cal. July 18, 2014) (internal citations omitted). Rule 26 also includes an explicit proportionality requirement; discovery must be proportional to the needs of the case. Fed. R. Civ. P. 26(1). This proportionality limitation applies to Rule 45 subpoenas to non-parties. St. Jude Medical S.C., Inc. v. Janssen-Counotte, 305 F.R.D. 630, 637 (D. Ore. 2015). Moreover, non-parties subject to a subpoena duces tecum "deserve extra protection from the courts." High Tech Medical Instrumentation v. New Image Indus., 161 F.R.D. 86, 88 (N.D. Cal. 1995) (citing United States v. Columbia Broadcasting System, 666 F.3d 364, 371-72 (9th Cir. 1982).

B. Documents and Information That Might Have Been Brought to Micron (RFPs 1-4, 10)

The parties' dispute with respect to RFPs 1-4 and 10 is relatively discrete. The court is asked to decide whether Micron, having already searched Rivers' email, hard drive, and phone, should be compelled to also search (1) shared drives and servers to which Rivers had access, and (2) custodians with whom Rivers may have shared Intel information. See ECF No. 69 at 20. Micron contends that the additional searches are unreasonable and pose an undue burden because the detailed review of Rivers' activity at Micron was fruitless (id. at 23), and because broad searches across its servers are "both potentially impossible to run given the magnitude of Micron's system and even if possible, they would require indexing and searching through potentially thousands of servers and 10's of petabytes of data. . . . This would require months

8

upon months of time and hundreds of hours of review time." Id. at 24.  At the hearing, Micron affirmed that it searched not only Rivers' assigned devices and email but also all transmission points through which Rivers' might have sent any uploaded documents to other digital locations at Micron, accounting for his entire "electronic bubble."  Micron affirmed that it blocks the use of USB devices, blocks the use of scrubbing software, and searched for evidence that the USBs at issue had been plugged in anywhere in its system.  Micron found no evidence of mass deletion or wiping of data within Rivers' "bubble."  Micron therefore represented to Intel that it had conducted "a reasonably diligent search effort" and concluded on that basis that "no such documents exist."  ECF No. 69 at 8, 14, 19, 20.

Here, the duty of the court is to fairly balance the burden faced by the producing third party and the legitimate discovery needs of the plaintiff.  The court agrees with Micron that Intel's demand that it search massive servers and shared drives is unduly burdensome and disproportionate because there is no specific indication that Rivers stored anything in these shared spaces, and if he did, that he did not already destroy it.  Moreover, Micron has affirmed that it searched all transmission points that Rivers could have possibly gone through to transmit documents from his own system access points to other Micron drives and servers, and the court finds that those efforts have been reasonably diligent.  Accordingly, the court accepts Micron's representation that "no such documents exist."  Further searches will not be ordered.

Based on this analysis, the court DENIES Intel's motion to compel production for RFPs 1-4 and 10.

C. Communication Regarding Misappropriated Information (RFPs 5, 6, 11)

The dispute as to RFPs 5, 6, and 11 differs from the dispute over RFPs 1-4 and 10 because these RFPs do not deal with misappropriated documents themselves, but seek communications about or related to the alleged misconduct.  Micron's arguments about the adequacy of its completed searches are much less persuasive in this context, because it is entirely plausible that two or more Micron employees communicated about the relevant information without including Rivers in the conversation.  Accordingly, Micron's search of Rivers' own devices and

////

transmission points is less likely to have identified all relevant responses to these requests.[1]

The court agrees with Intel that searching a specific set of custodians with whom Rivers had a relationship is reasonable and not unduly burdensome or disproportionate with respect to these RFPs. Intel has identified eleven specific custodians (Manjinder Bains, Nevil Gajera, Rucha Geedh, Josephine Hamada, Lingming Yang, Kristina Ming, Neeraj Sharma, Doug Trujilo, Bryan Woolstenhulme, Yen Chun Lee, and Jessica Chen) as well as Rivers' "managers" as search targets. Luedtke Decl., Ex. 10 at 10. For the sake of clarity, the court will define "managers" as those who had direct supervisory authority over Rivers. Requiring Micron to search specific, limited custodians is not unduly burdensome; the restriction to specific custodians will sufficiently limit the search.

However, while custodian searches are proportionate and reasonable in light of the facts of this case, a search of all Micron networks that Rivers may have had access to is not. As discussed above, that universe is very large. Without any specific indication that unique communications are present in the networks, it is unduly burdensome to require such a broad search. Thus, the court GRANTS Intel's motion to compel as to RFPs 5, 6, and 11 as to custodian searches only, and otherwise DENIES the motion as to these RFPs.

D. <u>Documents Related to Hash Values of the Documents listed in Attachment 1 (RFP 7)</u>

Attachment 1 is a list of files; in this FRP, Intel is requesting that Micron run "fuzzy hash searches" on these files to identify files that are similar to, but not exactly the same as, the files on the list. Intel thus seeks to discover any proprietary files that have been renamed and/or edited. ECF No. 69 at 30. Micron agreed to conduct the requested fuzzy hash searches with regard to Rivers' immediate technological universe, <u>id.</u> at 31, and the parties confirmed at the hearing that this has been accomplished and Intel has received the results. The motion is accordingly moot as to Rivers' own electronic work environment and potential transmission points. Intel nonetheless seeks to compel expansion of the search to custodians and shared drives, as with RFPs 1-4 and

////

---

[1] Moreover, Rivers would have had more difficulty policing or eliminating the conversations of others than he would his own. There is thus less reason to suspect spoliation of such evidence.

10. The court finds the analysis applied to those RFPs applicable here, and therefore DENIES Intel's motion as to RFP 7.

E. <u>Documents Reflecting Rivers' Efforts to Solicit Employees for Micron (RFP 9)</u>

The parties dispute whether the RFP seeking documents reflecting Rivers' efforts to recruit Intel employees to Micron is permissible. On review of all the arguments, the court finds that this request is not relevant to any claim or defense. The scope of discovery is broad but nonetheless confined to nonprivileged matters "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Intel's original complaint included a claim for violation of a non-solicitation clause, but that claim was dropped in the FAC. <u>Compare</u>, ECF Nos. 1 and 53. The RFC seeking documents related to "efforts to solicit employees" is plainly predicated on the dropped cause of action and is therefore no longer relevant to any party's claim or defense. Intel's attempt to re-characterize this RFP as directed to Rivers' "misappropriation and use of trade secrets and for breach of his confidentiality agreement" is unpersuasive.

The court recognizes, as discussed in the hearing, that the spoliation in this case has made it difficult for Intel to determine what search terms to use in order to identify information related to misappropriation and breaches of confidentiality. It is certainly possible that searches for personnel information might incidentally reveal such information. That possibility is speculative, however, and RFC No. 9 is not directed by its terms at relevant trade secret or confidential information. It is specifically directed at Rivers' efforts to "solicit or recruit Intel employees" over to Micron, which is no longer at issue in this case. ECF No. 69 at 32. Intel must find documents related to Rivers' alleged misappropriation of confidential and trade secret information with RFPs designed to uncover that information; the court will not contort this RFP into something that it is not. Intel's motion on this point is DENIED.

F. <u>Documents Referencing Rivers' Departure from Micron (RFP 12)</u>

Micron raises two main objections to Intel's RFP seeking documents related to Rivers' termination from Micron: that it is targeted at privileged information, and that the RFP is irrelevant to claims or defenses. ECF No. 69 at 37-38. Micron's argument is not persuasive. First, it is not difficult to imagine that some (even many) documents surrounding Rivers'

termination from Micron are unprivileged; indeed, Micron does not explain why all, or even the vast majority of, responsive documents would be privileged. A privilege log is the appropriate response to privileged responsive documents.

Second, it is reasonable to believe that Micron may have had information about Rivers' alleged misappropriation from Intel, which Intel did not have access to, and which was related to the termination of Rivers' employment at Micron. Indeed, Intel notes that it offered to drop this request if Micron certified that Rivers left Micron for reasons unrelated to taking or using Intel information, and Micron has not so certified. ECF No. 69 at 38. The RFP is sufficiently narrow and is calculated to lead to discoverable information, and the motion to compel on this point is therefore GRANTED.

## IV. Conclusion

Plaintiff's motion to compel (ECF No. 59) is GRANTED in part and DENIED in part as follows. The motion is:

1. DENIED as to RFPs 1-4 and 10;
2. GRANTED as to RFPs 5, 6, and 11 as to specific custodian searches only and otherwise DENIED;
3. DENIED as to RFP 7;
4. DENIED as to RFP 9; and
5. GRANTED as to RFP 12.

IT IS SO ORDERED.

DATED: September 12, 2019

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

12