James Kachmar, State Bar No. 216781
**weintraub tobin** chediak coleman grodin
law corporation
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone:	916/558.6000
Facsimile:	916/446.1611

Attorneys for Defendant/Counterclaimant
DOYLE RIVERS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| INTEL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>DOYLE RIVERS, an individual, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:18-cv-03061-MCE-AC<br><br>**FIRST AMENDED COUNTERCLAIM**<br><br>**AND DEMAND FOR JURY TRIAL**<br><br>Action Filed: November 27, 2018<br>Trial Date:  N/A |
| DOYLE RIVERS, an individual,<br><br>Counterclaimant,<br><br>v.<br><br>INTEL CORPORATION,<br><br>Counterdefendant. | |

<u>**FIRST AMENDED COUNTERCLAIM**</u>

Pursuant to Rules 13 and 15(a) of the Federal Rules of Civil Procedure, Doyle Rivers ("Rivers") alleges his First Amended Counterclaim against Intel Corporation ("Intel") as follows:

<u>**JURISDICTION AND VENUE**</u>

1.	This Court has supplemental jurisdiction under 28 U.S.C. §1367. This claim is also a compulsory counterclaim under FRCP 13.

2. Venue is proper within this judicial district under 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to Rivers' claims occurred in this judicial district.

## THE PARTIES

3. Counterclaimant Doyle Rivers is an individual residing in El Dorado Hills, California.

4. Counterdefendant Intel Corporation is a corporation authorized to operate in California and operates business facilities in this judicial district.

## ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

### Intel Recruits Rivers from Micron; Intel Requires Rivers to Sign an Unlawful Non-Compete as a Condition of His Employment

5. From 2001 to 2010, Rivers was employed with Micron Corporation ("Micron") and worked out of its facilities in Folsom, California. Rivers' work included the joint development of NAND flash technology, which was a joint venture between Micron and Intel. While working at Micron as part of the joint development team between Micron/Intel, Rivers was recruited by Intel to terminate his employment with Micron and join Intel, where his work eventually included the development of 3D XPoint technology as part of another joint venture between Intel and Micron.

6. On or about September 18, 2010, Intel provided Rivers with a document titled: "Employment Agreement." Rivers was advised that he had to sign the Employment Agreement as a term and condition of his becoming employed by Intel. The Employment Agreement further expressly states that Rivers' agreement was required "[i]n exchange for being employed by Intel Corporation or any of its subsidiaries, affiliates or successors." Rivers signed the Employment Agreement on or about September 18, 2010. A. Douglas Melamed signed the Employment Agreement on Intel's behalf. A true and correct copy the signed Employment Agreement is attached hereto as **Exhibit A**.

7. Section 6 of the Employment Agreement that was prepared by Intel and presented to Rivers as a condition of his beginning employment with Intel provides:

"**Non-solicitation.** I agree that for 12 (twelve) months after my employment ends, I will not solicit, directly or indirectly, any employee to leave his/her employment with Intel. This includes identifying Intel employees or providing employee compensation or skill information to any third party. I agree that any violation of this provision will result in immediate and irreparable injuries and harm to Intel, and that Intel shall have the option of pursuing all available legal or equitable remedies, including injunctive relief and specific performance."

Section 6 of the Employment Agreement is hereinafter referred to as the "Non-Solicitation Provision."

8. Intel used the form of Employment Agreement attached as Exhibit A beginning in April 2010 and on information and belief, required an unknown number of other California employees to sign the same or similar agreements containing language identical or similar to the language in the Non-Solicitation Provision that is set forth above in Paragraph 7. On information and belief, Intel continues to use the same or similar employment agreements with California employees as a condition of their employment that contain identical Non-Solicitation Provisions or similar unlawful language. The Non-Solicitation Provision is not necessary to protect Intel's claimed trade secrets, and upon information and belief, is an attempt to prevent Rivers (and other California employees) from competing with Intel after the termination of employment. In fact, the employment agreement has a separate provision that purportedly concerns "Confidential Information" separate from the Non-Solicitation Provision. The Non-Solicitation Provision interferes and restricts the mobility and ability of Intel's California employees, including Rivers, to earn a living in their chosen profession and its mere inclusion constitutes an unfair business practice under California law.

9. At the time Intel required Rivers (and other California employees) to sign the Employment Agreement as a condition of beginning and/or continuing employment with Intel, as well as the time that Rivers employment with Intel terminated, section 16600 of the California Business and Professions Code provided and still provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

10. At the time Intel required Rivers (and other California employees) to sign the Employment Agreement as a condition of beginning and/or continuing employment with Intel, as well as the time that Rivers employment with Intel terminated, section 17200 of the California Business and Professions Code provided and still provides: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

11. At the time Intel required Rivers (and other California employees) to sign the Employment Agreement as a condition of beginning and/or continuing employment with Intel, as well as the time that Rivers employment with Intel terminated, section 17203 of the California Business and Professions Code provided and still provides: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

12. In 2008, prior to Intel requiring Rivers (and other California employees) to sign the Employment Agreement as a condition for beginning and/or continuing employment with Intel, the California Supreme Court in *Edwards v. Arthur Anderson* (2008) 44 Cal.4th 937, ruled that under Business and Professions Code section 16600, any employment contract that sought to restrain an employee from engaging in his or her trade was unlawful, void and unenforceable unless it fell within one of the statutory exceptions to Business and Professions Code section 16600.

13. None of the statutory exceptions to California Business and Professions Code 16600 apply to the Employment Agreement and/or the Non-Solicitation Provision at issue here.

14. Intel's requirement that Rivers (and other California employees) sign the Employment Agreement containing the Non-Solicitation Provision as a condition of employment with Intel was unlawful and this agreement and/or provision is void and unlawful. Furthermore, Intel is guilty of violating the Unfair Business Practices Act set forth in California Business and Professions Code section 17200 by requiring Rivers to sign the Employment Agreement with the Non-Solicitation Provision.

15. Following the termination of Rivers' employment with Intel, Intel filed a Complaint against Rivers in this matter, Docket # 1, filed November 27, 2018.

16. In Paragraph 20 of the Complaint, Intel alleged that:

"In the Employment Agreement, Rivers promised that, for twelve months after leaving Intel, he would not directly or indirectly solicit Intel employees to leave their employment with Intel:

> I agree that for 12 (twelve) months after my employment ends, I will not solicit, directly or indirectly, any employee to leave his/her employment with Intel. This includes identifying Intel employees or providing employee compensation or skill information to any third party. I agree that any violation of this provision will result in immediate and irreparable injuries and harm to Intel, and that Intel shall have the option of pursuing all available legal or equitable remedies, including injunctive relief and specific performance."

17. Intel also alleged in Paragraph 54 of the Complaint that:

"Intel is informed and believes and therefore alleges that Rivers directly solicited Intel employees with whom he worked on 3D XPoint to join him at Micron in violation of his promise not to solicit Intel employees for a period of 12 months, as provided in his Employment Agreement."

18. The Second Cause of Action in Intel's Complaint was subtitled: "Breach of Contract – Non-Solicitation Agreement."

19. Intel incorporated by reference the allegations in Paragraphs 20 and 54 set forth above into the Second Cause of Action in the Complaint.

20. Intel alleged in Paragraph 75 of the Complaint: "In the Employment Agreement, Rivers agreed that for a period of 12 months after the end of his employment with Intel, he

would refrain from directly or indirectly soliciting any Intel employee from leaving his or her employment with Intel (the "Non-Solicitation Clause.")

21. Intel alleged in Paragraph 76 of the Complaint that: "Rivers is a computer hardware engineer, and the Non-Solicitation Clause is therefore not a meaningful restriction on Rivers' ability to practice his profession or to obtain employment in his field of expertise."

22. Intel alleged in Paragraph 80 of the Complaint that: "Rivers breached the foregoing provisions of his Employment Agreement with Intel by, within weeks of his departure from Intel, directly soliciting Intel employees with whom he worked on 3D XPoint development to leave employment at Intel and instead work for his new employer."

23. Intel claimed in Paragraph 90 of the Complaint that: "Rivers breached the foregoing provisions of the Employment Agreement by recruiting Intel employees to work for his new employer."

24. On or about January 4, 2019, Rivers filed a Motion to Dismiss (Dckt. # 18) in this matter seeking to dismiss, among other things, the Second Cause of Action in the Complaint that Intel alleged against him.

25. On or about February 7, 2019, Intel filed its Opposition to [Rivers'] Motion to Dismiss, Dckt. # 26.

26. In its Opposition, Intel claimed that the Non-Solicitation Provision in the Employment Agreement it required Rivers to sign as a condition to his beginning employment with Intel was valid under California law and enforceable as to Rivers. On information and belief, Intel continues to insist that the Non-Solicitation Provision is valid and enforceable and continues to require its California employees to agree to identical or similar Non-Solicitation Provisions, as a condition of employment like it did with Rivers.

27. On or about June 10, 2019, Intel filed its First Amended Complaint in this action, Docket # 53.

28. While the First Amended Complaint does not contain a specific cause of action for breach of the Non-Solicitation Provision as did the Complaint, Intel did not dismiss its original Second Cause of Action for Breach of the Non-Solicitation Provision with prejudice. As

a result, Rivers remains at risk of Intel seeking to enforce the unlawful Non-Solicitation Provision against him in violation of sections 16600 and 17200, et seq., of the California Business and Professions Code, either by seeking leave to further amend its complaint in this action, or by dismissing this action without prejudice and re-filing another action against Rivers alleging the same cause of action as its original Complaint seeking to enforce the unlawful Non-Solicitation provision.

## FIRST CAUSE OF ACTION

### Violation of California Business and Professions Code sections 17200, et seq.

29. Rivers realleges and incorporates by reference each and every fact alleged previously in Paragraphs 1 through 28 of this Counterclaim above.

30. The Business and Professions Code provides that any person who engages, has engaged, or proposes to engage in unfair business practices may be enjoined in any court of competent jurisdiction and/or ordered to pay restitution as a result of any unfair business practices.

31. Intel has engaged in unfair business practices as a result of engaging in the wrongdoing alleged above. The above described acts and conduct of Intel constitutes an unlawful, unfair and fraudulent acts amounting to unfair business practices in violation of Business and Professions Code sections 17200, et seq.

32. Intel's inclusion of an unlawful Non-Solicitation Provision in its employment agreements with California employees, such as Rivers, directly undermines California public policy promoting employee mobility as codified in section 16600 of the Business and Professions Code.

33. Rivers suffered injury as a result of Intel's unlawful conduct in that he lost money and property. Rivers was required to incur attorneys' fees and other costs as a direct result of Intel's unlawful use of the Non-Solicitation Provision in his employment agreement.

34. Rivers remains at risk of incurring further lost money or property in that Intel chose to file an amended complaint, rather than dismissing the original second cause of action with prejudice. Intel continues to insist that the Non-Solicitation Provision is valid and

enforceable against Rivers as well as other California employees, and Intel retains the right to seek to enforce it in this action by way of a further amendment to the complaint, or by way of instituting a new action against Rivers.

35. As a direct and proximate result of Intel's unfair business practices and the threat of such continuing unfair business practices, Rivers is entitled to a temporary restraining order and/or preliminary and/or permanent injunctive relief as a result of and to prevent Intel from engaging in further acts of unfair business practices.

WHEREFORE, Rivers prays for judgment as set forth below.

## SECOND CAUSE OF ACTION

### Declaratory Judgment Under Code of Civil Procedure section 1060

36. Rivers realleges and incorporates by reference each and every fact alleged previously in paragraph 1 through 35 above.

37. There is an actual controversy between Rivers and Intel regarding whether the Employment Agreement and/or its Non-Solicitation Provision are enforceable given that they violate section 16600 of the California Business and Professions Code.

38. Rivers maintains that the Employment Agreements and/or the Non-Solicitation Provisions that Intel required him, and required and/or requires other California employees, to agree to as a condition of employment with Intel, are void and unenforceable under California law concerning the invalidity of noncompetition agreements as being in violation of section16600 of the California Business and Professions Code.  On the other hand, Intel maintains the validity and enforceability of such provisions in violation of section 16600 and/or 17200 of the California Business and Professions Code, and on information and belief, continues to use such employment agreements and/or non-solicitation provisions as a condition of employment with other California employees.

39. Rivers remains at risk of incurring further lost money or property in that Intel chose to file an amended complaint, rather than dismissing the original second cause of action with prejudice, and Intel continues to insist that the Non-Solicitation Provision is valid and enforceable against Rivers.  Intel retains the right to seek to enforce it in this action by way

of a further amendment to the complaint, or by way of instituting a new action against Rivers.

40. Rivers seeks a declaration that Intel's use of the Employment Agreement, and its inclusion of the Non-Solicitation Provision, as a condition of employment for Rivers and other California employees violates section 16600 of the California Business and Professions Code and that the Employment Agreement and/or its Non-Solicitation Provision are therefore void and unenforceable under California law.

41. A declaration of this Court is necessary because there is a judiciable controversy between Rivers and Intel as to their respective rights and obligations under the Employment Agreement and its Non-Solicitation Provision.

WHEREFORE, Rivers prays for judgment as set forth below.

## JURY DEMAND

Rivers hereby demands a trial by jury for all claims to which he is so entitled

## PRAYER FOR RELIEF

WHEREFORE, Rivers prays for judgment as follows:

1. That plaintiff take nothing from Rivers by reason of its FAC;

2. A temporary restraining order and/or preliminary and/or permanent injunction against Intel from engaging in further acts of unfair business practices;

3. For a declaration that Intel's use the Employment Agreement and/or its Non-Solicitation Provision violate section 16600 of the California Business and Professions Code and are therefore void and unenforceable;

4. That Rivers recovers his costs of suit and attorney's fees incurred herein; and

5. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: October 18, 2019

**weintraub tobin** chediak coleman grodin
LAW CORPORATION

By:   /s / - James Kachmar
        James Kachmar

Attorneys for Defendant/Counterclaimant
DOYLE RIVERS

# EXHIBIT A

# EMPLOYMENT AGREEMENT

In exchange for being employed by Intel Corporation or any of its subsidiaries, affiliates or successors (*collectively called "Intel" in this Agreement*), I agree to the following:

**1. General Conduct.**
I will perform my assigned Intel duties and comply with all Intel policies, procedures, guidelines, rules, and instructions, including Intel's Code of Conduct and Corporate Information Security & Security policies.

**2. Prior Third Party Information.**
I will not bring to Intel, nor use as part of my Intel work, any proprietary or confidential information of any former employer or third party without their written authorization.

**3. Confidential Information.**
During and after my Intel employment, I will hold in strict confidence and not disclose or use any Confidential Information connected with Intel business or the business of any of Intel's suppliers, customers, employees, or contractors unless (i) such disclosure or use is required in connection with my Intel work, (ii) such information becomes lawfully and publicly known outside Intel, or (iii) an Intel officer expressly authorizes such disclosure or use in advance and in writing. For purposes of this Agreement, Confidential Information includes, without limitation: technical information (e.g. roadmaps, schematics, source code, specifications), business information (e.g. product information, marketing strategies, markets, sales, customers, customer lists or phone books), personnel information (e.g. organizational charts, employee lists, skill sets, names or phone numbers, personnel files, employee compensation) and other non-public Intel data and information of a similar nature. I understand and agree that all Confidential Information that I acquire in connection with my Intel employment is Intel's exclusive property. I agree to return to Intel all of its Confidential Information (hard or soft copies; originals and copies) either at the termination of my Intel employment or upon Intel's request. I agree that any violation of this provision will result in immediate and irreparable injuries and harm to Intel, and that Intel shall have the option of pursuing all available legal and equitable remedies, including injunctive relief and specific performance.

**4. Ownership of Proprietary Developments.**
Except as provided in the next sentence, I agree that all trade secrets, copyrights, mask works, trademarks, inventions (including service inventions), discoveries, designs, formulae, processes, methods, manufacturing techniques, improvements, ideas, copyrightable works, and other intellectual property which I create, invent or discover alone or with others during my Intel employment, (collectively "Proprietary Developments") are Intel's sole property from the moment of their creation, invention or discovery. This shall not apply to an invention that I develop entirely on my own time without using Intel equipment, supplies, facilities, or trade secret information, except for those inventions that either: (1) relate at the time of conception or reduction to practice of the invention to Intel business, or actual or demonstrably anticipated research or development of the Intel; or (2) result from any work performed by me for Intel. I agree that Intel has and shall always have sole legal and equitable title to all Proprietary Developments and I have no right to compensation for such Proprietary Developments. I agree to promptly disclose Proprietary Developments to Intel, and to the full extent allowed by law, but only to the extent not already owned by Intel pursuant to this Agreement and applicable law, hereby assign to Intel all rights in the Proprietary Developments. I agree that during and after my employment with Intel I will provide all assistance that Intel reasonably requests to secure or enforce its rights throughout the world with respect to Proprietary Developments, including signing all necessary documents to secure or memorialize those rights. If I fail or refuse to sign documents necessary to secure or enforce Intel's rights, or if Intel cannot locate me through the exercise of reasonable diligence, I irrevocably appoint Intel or its designee as my attorney to sign such documents in my name. I waive any rights that I may have in any Proprietary Developments and, to the extent that such waiver is ineffective under applicable law until a Proprietary Development is created, invented or discovered, I agree to waive such rights immediately upon the creation, invention or discovery of such Proprietary Development.

**5. Licensed and Non-Licensed Preexisting Employee Intellectual Property.**
I have listed in Appendix A any intellectual property that I own or control, in whole or in part, that I had created prior to my employment with Intel and that I intend to exclude from licensing to Intel ("Preexisting Employee Intellectual Property"). I have listed in Appendix A any Preexisting Employee Intellectual Property for which I have an economic interest in, but for which I do not have the right to grant a license to Intel. I grant Intel a non-exclusive, non-transferable (except within Intel), perpetual, irrevocable, royalty-free, world-wide license to all of my Preexisting Employee Intellectual Property, except for that which I have specifically listed in Appendix A, with the right to sublicense, to make, have made, use, sell, offer to sell, import, reproduce, have reproduced, prepare derivative works of, distribute, and otherwise dispose of, any product or document, under all patents, trade secrets, copyrights and copyrightable works, mask works, trademarks, inventions, discoveries, designs, formulae, processes, methods, manufacturing techniques, improvements, and ideas. This license only excludes the Preexisting Employee Intellectual Property I have specifically listed in Appendix A if I have provided sufficient detail to allow Intel to identify its subject matter, and Appendix A is submitted prior to the start of my employment. I agree that if I fail to make any required disclosure or breach any term of sections 4 and 5, any applicable limitations periods shall be tolled and shall not run as to any claim, right, or cause of action Intel may have relating to such disclosure or breach that would have been discovered had the required disclosure been made, until such time as Intel obtains actual knowledge of the facts giving rise to such claim. Nothing contained in this section shall limit other remedies otherwise available in law or equity to Intel.

**6. Non-solicitation.**
I agree that for 12 (twelve) months after my employment ends, I will not solicit, directly or indirectly, any employee to leave his/her employment with Intel. This includes identifying Intel employees or providing employee compensation or skill information to any third party. I agree that any violation of this provision will result in immediate and irreparable injuries and harm to Intel, and that Intel shall have the option of pursuing all available legal or equitable remedies, including injunctive relief and specific performance.

**7. Computer Communications Are Not Private.**
I acknowledge that use of Intel's computer systems is not private or confidential. I understand and consent to Intel's right to review any communications to or from my work computer, pager, phone or other electronic device and all computer information, including any password-protected employee communications.

**8. Miscellaneous.**
I understand that if Intel Corporation is not my Employer, Intel is signing this Agreement as agent for the Intel Group company that is my Employer. I understand and agree that my employment with Intel is "at will." This means that both Intel and I have the right to terminate my employment at any time, with or without advance notice and with or without cause (provided, however, that if I become employed by Intel in a non-U.S. location, local termination law will apply if inconsistent with this Agreement). The Agreement's terms and conditions are severable. If any part of this Agreement is found or held to be unenforceable in any jurisdiction in which this Agreement is being performed, such provision shall be enforced to the greatest extent permitted by law, and the remainder of this Agreement and such provision as applied to other persons, places or circumstances shall remain in full force and effect. This Agreement: (a) survives my employment with Intel; (b) inures to the benefit of successors and assigns of Intel; and (c) is binding upon my heirs, assigns, and legal representatives. I am not a party to any other agreement which will interfere with my full compliance with this Agreement, except as I have specifically identified in this Agreement. This Agreement may not be modified or amended except in writing, signed by the parties. Only the Vice President of Human Resources, Intel Corporation, or the General Counsel of Intel Corporation, or their delegate, has the authority to modify this agreement on behalf of Intel. This Agreement is effective the first day of my employment with Intel, and supersedes any prior Employee Agreement signed by me with Intel. I have carefully read all of the provisions of this Agreement and I understand and will fully and faithfully comply with all provisions.

**Intel Corporation**

A. Douglas Melamed
General Counsel

**Employee**

Doyle Rivers
Signature

Doyle Rivers
Printed Name & WWID # (please print clearly)

9/18/10
Date

Distribution: **White Copy** – US Records CH2-171 **Yellow Copy** – Employee **Pink Copy** – CH2-171

EmploymentAgreement.DOC (rev. 4/2010)